[Crim. No. 6589.   Second Dist., Div. One.   Mar. 6, 1959.]

In re EMERY TILGHMAN NEWBERN, on Habeas Corpus.

Earl Klein for Petitioner.

Roger Arnebergh, City Attorney (Los Angeles), Philip E. Grey, Assistant City Attorney, and William E. Doran, Deputy City Attorney, for Respondent.

THE COURT.—By means of habeas corpus the petitioner seeks his release from custody after conviction upon his plea of guilty of a misdemeanor, the violation of section 41.27(a) of

the Los Angeles Municipal Code (drunk in a public place). In support of his petition for release he asserts that the judgment rendered was in excess of the jurisdiction of the court in that it was in effect a judgment of banishment and that prior to his arraignment and plea of guilty he was not advised of his constitutional rights to counsel or given the opportunity to select counsel of his own choice.

As shown by the uncontroverted allegations of the petition and the affirmative allegations of the return, the facts are: On December 21, 1958, petitioner was arrested in the city of Los Angeles for violation of the ordinance above mentioned; after his arrest he was confined in the Lincoln Heights city jail; while so confined he suffered an epileptiform-type seizure; on the morning of December 22 there were in excess of 200 prisoners confined in four tanks adjacent to the courtroom of Division 58 of the Municipal Court of the Los Angeles Judicial District; on that morning prior to the time court had convened a deputy city public defender inspected the tanks in which these prisoners were confined and who were to be arraigned that morning; that he determined to his satisfaction that all the prisoners were awake and attentive. He then spoke from a microphone in the corridor of the jail addressing the prisoners confined in the four tanks and advised them of their right to a speedy and public trial, reasonable bail and that they were entitled to be represented by an attorney of their own choosing or if they were unable to employ counsel of their own choosing they could so inform the judge and that he, the public defender, would represent them. He further advised that they would be granted a continuance for that purpose. Thereafter he informed the clerk of the court that he was ready to proceed with the arraignments.

There is some conflict in the evidence before this court as to whether the petitioner was at the time the prisoners in the tanks were addressed by the public defender, confined in one of those tanks, or was, due to his illness, confined in the detention room off the booking office of the jail and in which there was no loud speaker connected with the public address system which the public defender used in advising the prisoners. In view of the conclusion we have reached as hereinafter stated, it is unnecessary for us to resolve this conflict.

Upon being arraigned before the court the following occurred: The prisoner asked the court if he pleaded guilty to the charge, if there was any chance of his being with his mother for Christmas, whereupon the judge asked: "Where is

she?" And petitioner answered: "In Oklahoma City, Oklahoma." And the judge then advised: "Perhaps there is. Is your plea guilty to this charge?" And the prisoner answered: "Yes sir, guilty." The court then addressed the petitioner as follows: "This document I have just signed is an order directing the Chief of Police to commit you to jail for a period of 180 days. However, there will be a five-day stay of execution in this matter, which means that you will be released now to get out of this state. This court warns you, however, that you had better get out of this state and stay out. You will be a fugitive from Justice, and while we will not extradite you from any other state on this, if you ever again set foot in the state of California, you are going to spend 180 days in jail just as surely as your name is Emery Newbern." Petitioner left the state but returned and on January 28, 1959, was arrested under a bench warrant and confined pursuant to the judgment rendered by the court on December 22, 1958. He is now confined pursuant to that judgment. It is apparent from the record before us that the petitioner is a chronic alcoholic and has suffered numerous arrests for drunkenness.

The judgment of the municipal court as set forth in the transcript of the docket of that court, which is a part of the record here, does not reflect the language used by the court in sentencing the petitioner but is only that the petitioner be imprisoned in the city jail of Los Angeles County for 180 days and that the judgment be stayed for five days; the defendant to be released on his own recognizance. Neither does the commitment under the authority of which the petitioner was held in custody by the chief of police contain any reference to the petitioner leaving the state and not returning thereto, but only recites the fact that petitioner was to be imprisoned for 180 days.

It has long been the law of this state that a judgment of banishment either from the state or from one part of the state is void as against public policy. (*In re Scarborough,* 76 Cal.App.2d 648 [173 P.2d 825]; *People* v. *Lopez,* 81 Cal. App. 199 [253 P. 169].) The court in the present case, however, was careful to so word its judgment as to not make it subject to attack as one of banishment. The judgment consists of merely a sentence to 180 days (the maximum penalty) with five days stay of execution of that judgment and as such it was one within the jurisdiction of the court and is not subject to attack in this proceeding.

We do not wish to be understood as approving the actions of

476

the trial judge in pronouncing sentence. The language used by him in sentencing the prisoner was such as to convey the impression to the prisoner that he was banished from the state and that the sentence of 180 days was not imposed as punishment for the misdemeanor committed but as a punishment that would be inflicted upon him should he exercise his right to remain an inhabitant of the state. We are advised by counsel for respondent that in sentencing the prisoner in the manner above related, the trial judge was but following an established routine or custom. If that be true the custom is not founded in law but is based solely upon someone's arbitrary view as to how offenders against an ordinance such as the one involved here should be punished. We are cognizant of the great burden placed upon the municipal court in handling the tremendous volume of cases of this character which arise in this densely populated area, but the difficulties with which the court is faced cannot and do not justify the adoption of procedures which are designed to evade the law of this state as to judgments of banishment even though the form of the judgment rendered thereunder may comply with the law. Such a procedure can only tend to cast reflection upon the administration of justice.

The abstract of the docket of the municipal court which is a part of the record here states: "Defendant in court duly arraigned, informed of all his legal rights." The presumption is that in preparing this record official duty was regularly performed (Code Civ. Proc., § 1963, subd. 15), and while this record may not be impeached in this collateral proceeding (*In re Connor*, 16 Cal.2d 701 at 708 [108 P.2d 10]), the constitutional rights of the petitioner being involved we may look to the entire record to ascertain the meaning of the entry. (*In re Bell*, 19 Cal.2d 488 at 501-504 [122 P.2d 22] ; *In re McVickers*, 29 Cal.2d 264 at 273 [176 P.2d 40] ; *Wilde* v. *Superior Court*, 53 Cal.App.2d 168 at 174-176 [127 P.2d 560] ; *In re Gutierrez*, 122 Cal.App.2d 661 at 663 [265 P.2d 16].) The entry in the docket does not state how, when or in what manner or means the defendant was informed of his constitutional rights. The uncontroverted facts shown by the return shows the meaning of the entry and that the only manner in which petitioner was advised of his right to counsel was by the announcement made by the public defender over a public address system outside of court or the presence of the judge.

Petitioner's right to counsel of his own choosing is one granted by both the state and federal Constitutions and it is

the duty of the court to protect this right and that duty it cannot delegate to others. ■ The proposition is clearly stated by our Supreme Court in *People* v. *Chesser,* 29 Cal.2d 815 at 821-822 [178 P.2d 761, 170 A.L.R. 246] : "One purpose of the constitutional guaranty is to protect an accused from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified if it were held that a waiver made in ignorance of its consequences would remove the protection of the Constitution. As stated in *Johnson* v. *Zerbst,* [304 U.S. 458 (58 S.Ct. 1019, 82 L.Ed. 1461)] the constitutional right of an accused to be represented by counsel of itself invokes the protection of the court when the accused is without counsel, and 'This protecting duty imposes the serious and weighty responsibility *upon the trial judge* of determining whether there is an intelligent and competent waiver by the accused. *While the accused may waive the right to Counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that termination to appear upon the record.'* (Italics added.) (304 U.S. at p. 465.)

■ "The determination of whether there has been an intelligent waiver of counsel involves a consideration of the nature of the charge, the facts and circumstances of the case, and the education, experience, mental competence and conduct of the accused. [Citations.]

■ "In order for a *trial judge* to determine whether there has been a competent and intelligent waiver of counsel, he must first ascertain whether the defendant clearly understands the nature and effect of his waiver." (Italics ours.)

■ The obligation of the court to perform the duty of advising a defendant of his right to counsel is expressly declared by section 987 of the Penal Code. It is self-evident that a statement by an unseen and unknown person over a public address system, by one not authorized either to advise the prisoners or to act upon any request made by them, does not and could not constitute the performance of the obligation placed by the Constitution and the statutes upon the court.

■ We are of the opinion that the petitioner was deprived of his constitutional rights and that the judgment of the court was therefore void and must be and is hereby annulled and the matter is remanded to the municipal court with instruction to permit the petitioner to appear before that court through counsel of his own choosing or through counsel appointed by the court if petitioner is financially unable to

employ counsel, and to permit the petitioner to withdraw his plea of guilty if he is so advised; petitioner to remain on the bail heretofore fixed by this court until the further judgment of the municipal court.