[Crim. No. 3625.    Third Dist.    June 25, 1964.]

In re WILLIAM E. ELSHOLZ on Habeas Corpus.

---

Robert J. Nareau, under appointment by the District Court of Appeal, for Petitioner.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, Edward Hinz, Jr., and Edsel W. Haws, Deputy Attorneys General, for Respondent.

THE COURT.—Petitioner is now serving a one year sentence in the Yolo County Jail, having been committed by an order of the Justice Court of the Washington Judicial District following revocation of probation. After an unsuccessful application in the Yolo County Superior Court, he seeks habeas corpus here. The People's return to our order to show cause brought before us the transcript of oral testimony tak-

en and documentary exhibits introduced in the course of the superior court habeas corpus proceeding.

On October 26, 1961, petitioner's former wife filed a complaint in the Justice Court of the Washington Judicial District, Yolo County, charging him with failure to support his four minor children, a violation of Penal Code section 270, and a warrant was issued. Defendant was arrested in Stockton in early November 1962. Mr. Norman W. Shaw, Jr., a Stockton attorney, arranged for petitioner's release on bail on a promise to appear on Friday, November 9, 1962. According to his verified petition, petitioner appeared at the Justice Court of the Washington Judicial District on November 9, 1962, and spoke to a woman clerk, who told him that no appearance was necessary at that time since the warrant had not been returned to the court. The clerk then telephoned Durwood Prather, an investigator for the Yolo County District Attorney, and arranged to have petitioner see Prather later that day. During their interview Prather told petitioner that unless he became current in his child support payments, Prather would recommend to the judge that petitioner receive a year in jail and three years on probation. Petitioner recites that he then returned to Stockton and was informed by Attorney Shaw that the matter had been successfully terminated. On May 12, 1964, petitioner was arrested as a probation violator and appeared in the chambers of the judge of the Washington Judicial District Court, where he was informed by the judge that petitioner on an earlier occasion pleaded guilty to the nonsupport charge, had been placed on three years' probation, which petitioner had now violated, and that he was sentencing petitioner forthwith to one year in the county jail. Petitioner alleges that at no previous time had he ever personally or through counsel appeared before that judge and that the judge had never sentenced or placed him on probation. Petitioner further alleges that the judge of the justice court did not direct petitioner's supervision by the probation officer nor did he furnish petitioner with a copy of any paper informing him of his obligations as probationer, nor did he order defendant to report either to the court or the probation officer.

The original misdemeanor complaint is before us. Handwritten in red pencil on the complaint is the following notation: "Guilty plea 11-9-62 - 1 year susp. on condition def. pay through D.A. office the amount of $160 per mo. for the support of his children 1st payment to be made on or before

the 1st of Dec. 1962 and on the 1st day of each mo. thereafter - def. placed on probation for a period of 3 years.''

The complaint contains a second red pencil notation reading as follows: ''Def. brought into court 5-14-64. His probation revoked and Def sentenced to 1 year in Co Jail.''

At the habeas corpus hearing in the superior court, petitioner's testimony corresponded substantially with the allegations of his petition. He stated that on November 9, 1962, he appeared at the justice court in Broderick, that the woman clerk told him that no court appearance had been scheduled, that she called Prather, the district attorney's investigator in Woodland, that petitioner then drove to Prather's office in Woodland (which is approximately 15 miles from Broderick), that Prather told him he would recommend ''one year jail and three years probation'' and told petitioner to go home. He testified that he did not appear before the judge on that date or at any time until May 14, 1964, when his probation was revoked.

Received in evidence by stipulation was an affidavit of Norman Shaw stating in substance that it was the bail bondsman who had specified November 9, 1962, as the date for petitioner's court appearance; that upon returning to Stockton, petitioner told him that he had appeared at the office of the justice court but he had not been arraigned because the warrant had not yet been returned from San Joaquin County; that Shaw then discussed the situation with Prather and with either a clerk or the judge of the Washington justice court in Broderick and was informed that no further appearance in the case would be necessary; that Shaw himself made no appearance on behalf of petitioner. On November 14, 1962, Shaw addressed a letter to the judge of the justice court requesting exoneration of bail.

The judge of the justice court testified. He stated that he had no independent recollection of the matter, except as to the revocation of probation on May 14, 1964. The red pencil notations on the complaint were in the judge's handwriting. According to practice, the clerk, frequently not in the courtroom during proceedings, extracted docket entries from such notations made by the judge.

November 9, 1962, was a Friday. Prather, the district attorney's investigator, testified that normally he was in Broderick, the location of the Washington district justice court, on Tuesdays and Thursdays, that normally he would

be at his office in Woodland on Fridays; that he had no independent recollection of petitioner; that according to his records petitioner appeared at Prather's office during the morning of November 9, 1962. He denied ever causing a guilty plea to be entered for a defendant.

In revoking petitioner's probation, the justice court judge had before him an affidavit of B. D. White, an investigator in the district attorney's office. The affidavit recited: "That said defendant received a copy of said [probation] order and certified that he had received said copy of said order, had read the same and understood the terms thereof; ..." Notwithstanding this sworn statement, Mr. White admitted at the hearing that there was no written probation order, that defendant did not receive a copy of any such order and did not certify that he received the same or knew the contents thereof.

California law demands that a defendant be personally present at an arraignment, although in misdemeanor cases he may appear by counsel. (Pen. Code, §§ 977, 1429.) If he appears without counsel he must be informed of his right to counsel. (Pen. Code, § 987.) When a defendant pleads guilty in a municipal or justice court, the court must fix a time, not less than six hours nor more than five days after the plea, for pronouncing judgment, unless the defendant waives the postponement. (Pen. Code, § 1449.) A justice court must maintain a docket in which must be entered all orders and proceedings in criminal cases. (Pen. Code, § 1428.)

In view of these fundamental and well-known requirements, petitioner's claim of *in absentia* plea and sentence is serious. ▉ In this habeas corpus action the record of proceedings in the justice court creates a presumption of verity *so far as it goes*. (*In re Chester*, 52 Cal.2d 87 [338 P.2d 431].) In the ordinary course of business in municipal and justice courts the personal presence of the defendant for arraignment and sentence may be inferred from recorded entries which impliedly reflect his presence. Thus an entry that defendant was duly arraigned or that he was informed of his right to counsel would, at least by implication, provide a prima facie demonstration of his presence. The record at hand—which consists solely of the red pencil notation by the judge—contains neither statement. Therefore, neither expressly nor by implication, does it contain any statement rebutting the charge of *in absentia* proceedings. Further, the

record before us does not contain any docket entry which might, either by presumption or by inference, reject petitioner's claim that he did not appear for plea and sentence.

For the purpose of a habeas corpus proceeding, testimony regarding the custom or practice of the arraigning or sentencing judge may fill gaps in the official record. (See *In re Chester, supra.*) The judge was on the witness stand. The district attorney did not ask him—and accordingly he did not testify—that he had any custom, habit or practice of entering pleas, probation orders or sentences only in the physical presence of the defendant or defense counsel. In view of the serious and flat charge made by petitioner, the absence of such a question and response is as startling as it is conspicuous. Equally conspicuous is the absence of any evidence that petitioner's case had been placed on the November 9, 1962, calendar of the justice court.

The presumption that official duty has been regularly performed gives way to fact when irregularity is clearly shown. (Code Civ. Proc., § 1963, subd. 15; *People* v. *Rodriquez,* 213 Cal.App.2d 555, 560 [29 Cal.Rptr. 83].) Here the petitioner testified that the plea and sentence had been entered in his absence. The record of proceedings does not rebut it. The oral testimony of the public officials whose actions are in question does not rebut it. In addition, the failure to produce the court's calendar for the crucial day as well as evidence of the judge's custom or practice faces us with the inference, which we would draw with great reluctance, that the evidence might be more favorable to petitioner than to the People. (See Witkin, Cal. Evidence, pp. 88-91.)

Were the factual question of petitioner's presence in court on November 9, 1962, the only matter for determination, we might direct a reference in order to peer closely into that question. The record of proceedings, however, has other and fatal deficiencies. Waiver is the voluntary relinquishment of a known right and must be affirmatively shown. (*Burns* v. *Municipal Court,* 195 Cal.App.2d 596, 598 [16 Cal. Rptr. 64].) The trial judge had the obligation of advising petitioner of his right to counsel and to determine whether there had been a competent and intelligent waiver with a clear understanding of its nature and effect. (Pen. Code, § 987; *In re Newbern,* 168 Cal.App.2d 472, 477 [335 P.2d 948].) The constitutional rights of petitioner were involved at this point and a judgment pronounced in

violation of these rights may be annulled on habeas corpus. (*In re Turrieta,* 54 Cal.2d 816 [8 Cal.Rptr. 737, 356 P.2d 681] ; *In re Newbern, supra.*)

The record of the justice court fails utterly to show that the court complied with its constitutional and statutory obligation to advise the accused of his right to counsel and to proceed only after an intelligent waiver. A judgment pronounced under such circumstances is void. (*In re Newbern, supra.*)

The record of the justice court demonstrates also that judgment was pronounced immediately following petitioner's plea of guilty without any waiver of time for sentence, in violation of Penal Code section 1449. ██ Pronouncement of judgment under such circumstances is error, which affects the judgment but not the plea or finding of guilty. (*Matter of Application of Robbins,* 27 Cal.App. 677, 682 [151 P. 14] ; *In re Hemstreet,* 18 Cal.App. 639, 641 [123 P. 984] ; see also *In re Garbarini,* 129 Cal.App. 618, 626 [19 P.2d 27].) Ordinarily such an error should be attacked on an appeal rather than by habeas corpus. Here, however, petitioner was not represented by counsel at the time of imposition of sentence, and the deficiencies in the arraignment and sentencing procedure did not come to light until revocation of the purported probation, approximately one and one-half years later. Since the defective sentencing procedure affects the validity of petitioner's present confinement, it is appropriate that it receive consideration here.

In summary: We are confronted with a fact question whether plea and judgment were entered in defendant's absence. We do not fully and finally determine that question because, in view of other deficiencies in the proceedings, it is no longer pivotal. ██ The plea of guilty is void because the proceedings on their face show lack of compliance with constitutional and statutory directions for safeguarding petitioner's right to counsel. (*In re Newbern, supra,* 168 Cal. App.2d at pp. 476-477.) ██ Further, the judgment must be vacated in view of the apparent violation of Penal Code section 1449. Thus petitioner must be released from custody regardless of the outcome of the factual question. The invalidity of defendant's 1962 arraignment and sentence does not constitute an acquittal of the charge against him and he remains subject to arraignment and further proceedings thereon.

Petitioner makes additional contentions as to propriety of

the probation order and its revocation. It is unnecessary to consider these contentions.

It is ordered that petitioner be discharged from custody.

A petition for a rehearing was denied July 16, 1964, and respondent's petition for a hearing by the Supreme Court was denied August 20, 1964.