[Crim. No. 8387.   In Bank.   Jan. 28, 1965.]

In re NORRIS E. JOHNSON on Habeas Corpus.

George L. Vaughn, Jr., for Petitioner.

Roger Arnebergh, City Attorney (Los Angeles), Philip E. Grey, Assistant City Attorney, William E. Doran and James H. Kline, Deputy City Attorneys, for Respondent.

MOSK, J.—In this matter we issued an order to show cause on an application for habeas corpus filed by Attorney George L. Vaughn, Jr., on behalf of Norris E. Johnson (hereinafter called petitioner), who was confined in the Los Angeles County Jail under multiple judgments of conviction for various traffic offenses. Pending our disposition of the case we ordered petitioner released on bail, pursuant to his application therefor.

Petitioner's principal contentions are (1) that the manner in which he was informed of his right to counsel was constitutionally inadequate, and (2) that no valid waiver of that right is shown. We have concluded that the first of these points is without merit but that the second is well taken and hence warrants the relief sought.

On October 15, 1963, five misdemeanor complaints were filed against petitioner. Each complaint charged him with driving a vehicle upon the highways with knowledge of the fact that his operator's license had been revoked (Veh. Code, § 14601), plus a number of other Vehicle Code violations.[1] On November 18, 1963, petitioner was arrested on the foregoing charges and was held overnight in jail. On the morning of November 19 he was brought before Judge Vincent N. Erickson in Division 51 of the Los Angeles Municipal Court. Apparently petitioner was one of a large number of defendants charged with traffic offenses and assembled in Judge Erickson's courtroom that morning. There is evidence in the record from which it can be inferred that petitioner was without counsel; that Judge Erickson made an opening statement of constitutional rights to all the defendants collectively, then proceeded to arraign each defendant individually; that petitioner, while unrepresented by counsel, entered pleas of guilty to the offenses charged in the five complaints; that Judge Erickson did not sentence petitioner immediately but required him to wait until

---

[1]The latter offenses, committed at various times during the preceding few weeks, included violations of Vehicle Code sections 12951 [driving without physical possession of a license]; 14610, subdivision (a) [possession of a revoked or fictitious license]; 14610, subdivision (d) [refusal to surrender license]; 21453, subdivision (a) [failure to stop for red light]; 24008 [operating a "lowered" vehicle with insufficient road clearance]; 24601 [improper license plate light]; 24004 [operating vehicle after notification by police officer that it is unsafe or unlawfully equipped].

the other cases had been concluded at which time the judge imposed consecutive sentences of 180 days on each of the five counts of driving with a revoked license, a total of 900 days, plus suspended sentences on the remaining counts.

▪ Article I, section 13, of the California Constitution declares in relevant part that "In criminal prosecutions, *in any court whatever,* the party accused shall have the right . . . to appear and defend, in person and with counsel." (Italics added.) Under this provision there can be no doubt that the fundamental constitutional right to the assistance of counsel at all stages of the proceedings (*see Gideon* v. *Wainright* (1963) 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733]; *People* v. *Douglas* (1964) 61 Cal.2d 430, 434 [1] [38 Cal.Rptr. 884, 392 P.2d 964]) is, in California at least, not limited to felony cases but is equally guaranteed to persons charged with misdemeanors in a municipal or other inferior court. (*In re Masching* (1953) 41 Cal.2d 530, 532 [2] [261 P.2d 251]; *In re McCoy* (1948) 32 Cal.2d 73, 76 [1] [194 P.2d 531]; *In re Jingles* (1946) 27 Cal.2d 496, 498 [1] [165 P.2d 12]; see also Pen. Code, § 686, subd. 2, and § 690.)

▪ Implementing this constitutional declaration, Penal Code section 858 requires that "When the defendant is brought before the magistrate upon an arrest, either with or without a warrant, on a charge of having committed a public offense, the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings." Correlative to this duty to inform the defendant are the further requirements that the magistrate must thereupon "ask him if he desires the aid of counsel, and allow him a reasonable time to send for counsel" and "If the defendant desires and is unable to employ counsel, the court must assign counsel to defend him." (Pen. Code, § 859.)[2] Again, if the defendant is without counsel at the time for arraignment "he must be informed by the court that it is his right to have counsel before being arraigned, and must be

---

[2]Although on its face section 859 applies only to cases "over which the superior court has original jurisdiction," it is declaratory in this respect of the several duties of the magistrate which give meaning and effect to the constitutional guarantee of counsel "in any court whatever." Thus in *In re Newbern* (1960) 53 Cal.2d 786, 790 [3-4] [3 Cal.Rptr. 364, 350 P.2d 116], where the defendant was arraigned on two misdemeanor complaints in the municipal court, we cited section 859 in support of our statement that it has been "conclusively established in this state" that the right to counsel "includes the judicial appointment of counsel in cases in which the accused is financially unable to employ counsel himself."

asked if he desires the aid of counsel. If he desires and is unable to employ counsel, the court must assign counsel to defend him.'' (Pen. Code, § 987.) Each of these statutory requirements, moreover, must be observed in such a manner as to promote rather than defeat the constitutional intent, for ''the very purpose of the duty thus enjoined upon the court to advise an accused is to preserve to him a right which the Constitution has conferred upon him.'' (*In re Turrieta* (1960) 54 Cal.2d 816, 820 [3] [8 Cal.Rptr. 737, 356 P.2d 681].)

In the case at bar the first question to be resolved is whether petitioner was adequately informed of his rights under the foregoing constitutional and statutory provisions. The facts in this respect are somewhat unclear, as no reporter recorded the proceedings in Judge Erickson's court on the morning of November 19, 1963. On the one hand, petitioner alleges that he ''was not informed of his Constitutional rights or of the laws of the State of California or that he was entitled to be represented by counsel before he entered the purported pleas of guilty. . . .'' In support of this allegation petitioner has presented an affidavit of one Charles Robert Franklin,[3] who avers that he was in custody with petitioner on November 18, 1963; that the next morning they were both taken to Division 51 of the Los Angeles Municipal Court; and that ''We were never told by the Judge that we had a right to a lawyer or anything about constitutional or legal rights.'' █ On the other hand, the official docket entry reflecting the proceedings of November 19 on the five complaints filed against petitioner recites in relevant part: ''Defendant in court, duly arraigned, *informed* of the charges against him and *of his legal rights.''* (Italics added.) There is a presumption, of course, that in preparing this docket entry official duty was regularly performed (Code Civ. Proc., § 1963, subd. 15), and on collateral attack such an entry must ordinarily be deemed to speak the truth. (*In re Chester* (1959) 52 Cal.2d 87, 89 [1] [338 P.2d 431], citing *In re Connor* (1940) 16 Cal.2d 701, 707-708 [5-7] [108 P.2d 10].)

█ Even if true, however, ''The entry in the docket does not state how, when or in what manner . . . the defendant was

---

[3]Petitioner first sought habeas corpus in the superior court, and an alternative writ issued. Mr. Franklin's affidavit was filed in that proceeding, together with opposing declarations of Judge Erickson and Alfonso Campbell, Jr., deputy clerk in Judge Erickson's court. After hearing and argument the alternative writ was discharged and petitioner was remanded to custody. The record of that proceeding has been presented to this court, and we may take judicial notice of its contents.

informed of his constitutional rights'' (*In re Newbern* (1959) 168 Cal.App.2d 472, 476 [4a] [335 P.2d 948]), nor does it specify which of his various rights were thus made known to him. Here, as in *Newbern,* ''the constitutional rights of the petitioner being involved we may look to the entire record to ascertain the meaning of the entry.'' (*Id.* at p. 476 [3].) Appended to the return are two affidavits describing the custom of Judge Erickson in the situation before us. ▮ Evidence of a custom or practice of the arraigning judge may be considered in a habeas corpus proceeding for the purpose of explaining or filling certain gaps in the official record. (*In re Elsholz* (1964) 228 Cal.App.2d 192, 197 [2] [39 Cal.Rptr. 356]; see *In re Chester* (1959) *supra,* 52 Cal.2d 87, 90-91.) Although Judge Erickson was unable to recall the particular events now in issue, his declaration states ''That it was my custom and practice at the opening of each morning and afternoon court session to make a detailed statement of constitutional rights, including the right of a defendant to be represented by legal counsel at all stages of the proceedings, and if a defendant in custody did not have an attorney, the right to be represented by the Public Defender, to all of the defendants collectively, including those in custody; That on November 19, 1963, a Deputy Public Defender was in the said courtroom or available on call in said courtroom at all times that Division 51 was in session.'' The declaration of his deputy clerk, Mr. Campbell, is to the same effect.[4]

▮ We need not be detained by the apparent factual conflict between the Franklin affidavit and the docket entry as explained and amplified by the affidavits of Judge Erickson and Mr. Campbell. In the most recent document filed by petitioner—his application for a hearing in this court—he appears to have abandoned the allegation that no information whatever was given concerning his right to counsel, and now concedes in effect that Judge Erickson made an opening statement on this subject to all the defendants in the courtroom collectively before proceeding to the arraignments. Petitioner contends,

[4]At the superior court hearing in this matter Mr. Campbell testified that the defendants ''are brought out by the officers of the court and seated so they can hear the statement of rights''; and that, in substance, Judge Erickson ''proceeds to explain that they are entitled to trial within 30 days from date of arrest or 45 days from date of appearance. They are entitled to be represented by counsel at all stages of the proceedings, and if they do not have the money to secure counsel he will appoint the Public Defender to represent them. He explains that if they are not brought to trial within 30 days they can ask that the case be dismissed against them and he proceeds to explain the penalty assessment.''

however, that such a statement was inadequate to discharge the above discussed constitutional and statutory duties of a magistrate to inform the defendants of their right to counsel. The argument is that a collective statement to a group of defendants may possibly not be heard by those farther from the bench because of "the many physical vagaries of a crowded courtroom"; and even though heard, it may not be understood by those of below-average intelligence or linguistic comprehension. ▮ A constitutional issue, however, will not be decided on the basis of speculation or hypotheses not shown to affect the parties before the court. (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305].) ▮ Here petitioner neither alleges nor shows that he personally failed to hear and understand Judge Erickson's statement. In the absence of such a showing we must presume, in accordance with common experience, that what is spoken with the intent of being heard by those in the speaker's presence is in fact so heard, and that what is heard is understood.[5]

▮ It bears emphasizing that the statutory directives (Pen. Code, §§ 858, 859, 987) do not specify the precise manner in which the courts are to apprise defendants of their right to counsel. Within the ambit of the constitutional guarantees, therefore, a certain leeway is permissible in handling these important but essentially preliminary matters. No hard and fast rule, no ideal procedure, will accommodate the diverse problems facing our arraignment courts today; rather, the circumstances of each method of informing defendants of their rights should, if challenged, be carefully weighed in the constitutional balance. Thus in *In re Newbern* (1959) *supra*, 168 Cal.App.2d 472, 476 [4a]-477 [4b], the court found a denial of constitutional rights where more than 200 prisoners confined in four jail tanks were "advised" of their rights by an unseen and unknown deputy public defender speaking to them in Orwellian manner over a public address system from a microphone in a corridor of the jail. By contrast, in *In re Sheridan* (1964) 230 Cal.App.2d 365, 368-369 [40 Cal. Rptr. 894], no denial of constitutional rights was found where the defendants were assembled in the courtroom for the announced purpose of being advised of their rights, and that advice was read to them by the clerk at the behest and in the

---

[5]To ensure against possible individual shortcomings in either respect is not a difficult matter. The judge, having made his collective statement of rights, need only preface the arraignment of each defendant thereafter by asking if that defendant heard and understood the general statement. Certainly this is a desirable practice.

presence of the judge. In the present case the advice as to rights was given in open court, and was given by the judge personally rather than through his clerk. No constitutional defect appears thus far in the proceedings.

Petitioner remained unrepresented by counsel, however, both at his arraignment and later that day when five maximum and consecutive jail sentences were imposed on him. We must therefore determine whether at any point in the proceedings petitioner effectively waived his constitutional right to counsel; lacking such a waiver, of course, the judgments of conviction cannot stand. There is no contention that petitioner ever expressly declared that he waived his right to counsel, and the record is devoid of any such declaration. On the contrary, it appears that when it came petitioner's turn to stand before the bench the judge proceeded directly to the arraignment, reading off the charges and asking petitioner how he pleaded.[6] The People argue that by failing to request assistance of counsel and by pleading guilty as charged petitioner "impliedly" waived his constitutional right to counsel. For this proposition the People rely on *In re Jingles* (1946) *supra,* 27 Cal.2d 496, 499 [4], where we stated: "Having been fully advised concerning his right to be represented by counsel, petitioner's implied waiver of that right resulted from his act of voluntarily entering his plea of guilty, without having the aid of counsel and without requesting the aid of counsel, after being thus fully advised."

The issue, however, is not as simple today as it may have been nearly two decades ago when *Jingles* was decided. ■ To begin with, "it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request." (*Carnley* v. *Cochran* (1962) 369 U.S. 506, 513 [82 S.Ct. 884, 8 L.Ed.2d 70] and cases there cited.) Petitioner's failure to make such a request, accordingly, cannot be deemed a waiver of this constitutional right. ■ Nor is the entry of a guilty plea conclusive of a waiver; the holding of a state court that by pleading guilty a defendant will be conclusively presumed to have waived counsel has been expressly disapproved by the United States Supreme Court as

---

[6]The docket entry of these proceedings states in its entirety: "Cause called. Judge Vincent Erickson presiding. Both parties ready. People represented by Harold M. Van Elgort, Deputy City Attorney. Defendant in propria persona. Defendant in court, duly arraigned, informed of the charges against him and of his legal rights. Defendant gives true name as charged and enters plea of guilty of the offenses charged: [listing Vehicle Code sections]."

"inconsistent with our interpretation of the scope of the Fourteenth Amendment. . . . A defendant who pleads guilty is entitled to the benefit of counsel, and a request for counsel is not necessary. It is enough that a defendant charged with an offense of this character [i.e., burglary] is incapable adequately of making his defense, that he is unable to get counsel, and that he does not intelligently and understandingly waive counsel." (*Rice* v. *Olson* (1945) 324 U.S. 786, 788-789 [65 S.Ct. 989, 89 L.Ed. 1367].)

A showing of the latter element—i.e., that the defendant "intelligently and understandingly" waived his right to counsel—is crucial. A course of conduct that outwardly implies an intent to waive will nevertheless be held insufficient unless it appears that such a "waiver" was intelligently and understandingly made. Thus purported waivers of the right to counsel have been set aside by the courts, in the circumstances there shown, even where the defendant had declined an offer of counsel and had entered a plea of guilty (*Moore* v. *Michigan* (1957) 355 U.S. 155 [78 S.Ct. 191, 2 L.Ed.2d 167]; *People* v. *Chesser* (1947) 29 Cal.2d 815 [178 P.2d 761, 170 A.L.R. 246]), or where the defendant had discharged his counsel before trial (*Patton* v. *North Carolina* (4th Cir. 1963) 315 F.2d 643). Where, as here, petitioner neither expressly declined nor discharged counsel but merely responded "Guilty" to the court's question of how he pleaded, there is nothing in the record which remotely intimates that he thereby made an *intelligent and understanding* waiver of his constitutional right to counsel. To infer that crucial element from the bare plea of guilty would be inconsistent with our recent statement in *People* v. *Douglas* (1964) *supra,* 61 Cal.2d 430, 434 [4a], quoting from *Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357], "that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'" Observing that "the principles declared in *Johnson* v. *Zerbst* [are] equally applicable to asserted waivers of the right to counsel in state criminal proceedings," the court in *Carnley* v. *Cochran* (1962) *supra,* 369 U.S. 506, 515-516, concludes that "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." No such showing appears here.

Moreover, it is settled that "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, *upon the particular facts and circumstances surrounding that case,* including the background, experience, and conduct of the accused." (Italics added.) (*Johnson* v. *Zerbst* (1938) *supra,* 304 U.S. 458, 464; accord, *People* v. *Chesser* (1947) *supra,* 29 Cal.2d 815, 822 [4].) Manifestly that determination must be made *before* any plea—guilty or otherwise—is accepted by the trial court, or the right to counsel loses most of its meaning and effectiveness.[7] The making of this determination in a timely fashion is therefore the "serious and weighty responsibility" of the trial judge. (*Johnson* v. *Zerbst* (1938) *supra,* 304 U.S. 458, 465.) As we said in *Chesser* (at pp. 821 [1]- 822 [5] of 29 Cal.2d), "The fact that defendant pleaded guilty is not conclusive. . . . In order for a trial judge to determine whether there has been a competent and intelligent waiver of counsel, he must first ascertain whether the defendant clearly understands the nature and effect of his waiver." More particularly, "the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he 'understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted.' " (*In re James* (1952) 38 Cal.2d 302, 313 [9] [240 P.2d 596].)

Yet *James, Chesser,* and similar decisions cited hereinabove involved the commission of serious felonies, a fact carefully

[7]Reflecting this reality, Penal Code section 987 expressly requires that "before being arraigned" the defendant must be informed of his right to court-appointed counsel if he is unable to provide his own.

Compare Penal Code section 1018, which provides in part that a plea of guilty to a noncapital felony charge shall not be accepted from a defendant without counsel "unless the court shall first fully inform him of his right to counsel and unless the court shall find that *the defendant understands his right to counsel and freely waives it* and then, only if the defendant has expressly stated in open court, to the court, that he does not wish to be represented by counsel." (Italics added.) Although this section is applicable on its face only to felony cases (cf. fn. 2, *ante*), it is declaratory of the solicitude of the Legislature that the constitutional right to counsel shall not become a dead letter through a possible lack of understanding by defendants. Since, as shown at the outset, that constitutional right is equally guaranteed to persons charged with misdemeanors, we may not presume that the Legislature intended to deny similar protection to the latter by enacting this section. It is noted, moreover, that section 1018 concludes by declaring that its provisions "shall be liberally construed to effect these objects and to promote justice."

mentioned in each opinion. Conceivably a somewhat less stringent rule might be constitutionally permissible in misdemeanor cases. Practical considerations, adverted to earlier in discussing methods of informing defendants of their rights, loom still larger at this point. We must recognize that the typically crowded arraignment calendars of our courts pose urgent problems in the administration of justice in California. This is particularly true of those courts in large municipalities which are called upon to deal with an unending stream of traffic violations, drunk cases, vagrancies, and similar petty offenses. ▇ While there can be no impairment of the fundamental constitutional rights of any defendant, however minor his crime, in certain situations there may be a choice of valid ways to implement these rights. Where such is the case—and constitutional rights are respected—the convenience of the parties and the court should be given considerable weight. For example, probably the vast majority of citizens haled into court on traffic violations share the judge's interest in prompt disposition of their cases, feeling themselves sufficiently inconvenienced by having to make personal appearances in the first place.[8] To require the judge to orally examine each such defendant at length for the purpose of determining his capability of defending himself would seem to be an idle and time-wasting ritual. Compliance with the spirit of the constitutional mandate that an intelligent waiver of counsel must affirmatively appear in the record may be efficiently achieved in such cases in a variety of acceptable ways.

▇ In the case at bar, however, additional considerations were present to distinguish it from the ordinary simple traffic offense. The trial court had apparently decided, within its discretion, to deal sternly with this repeated offender; for this reason his case was specially continued for sentencing until all other matters had been completed,[9] whereupon the court

---

[8]Indicative of this very understandable attitude on the part of most traffic offenders are the following statewide statistics compiled by the Judicial Council for the most recent fiscal year (1963-1964): approximately 7,275,000 traffic tickets were given out during that period, but in some 5,672,000 of such cases (or almost 78 per cent) the accused chose summary disposition of his charge by forfeiting bail; of those who appeared in court some 70,000 pleaded not guilty and only 4,196 demanded a jury trial, while over half a million entered pleas of guilty.

[9]Mr. Campbell, the deputy clerk of Judge Erickson's court, testified that in cases involving defendants convicted of multiple offenses it was Judge Erickson's practice not to proceed immediately to judgment but to put the matter over to the end of calendar, allowing time for consideration in chambers of the particular facts and circumstances of the case.

recalled him before the bench and imposed five maximum and consecutive jail sentences totaling 900 days. Reduced to lay terminology, this amounted to nearly two and a half years in jail. In view of the multiplicity and potential seriousness of the charges the court should have made a reasonable effort, before accepting petitioner's pleas of guilty, to determine whether he understood his predicament and was capable of representing himself effectively at all stages of the proceedings. In *In re Sheridan* (1964) *supra,* 230 Cal.App.2d 365, 369, defendants charged with four counts of annoying or molesting children (Pen. Code, § 647a, subd. (1), a misdemeanor) were informed by the court that even if they expressly waived counsel ''the Court will then consider the nature of the charge, the facts and circumstances of the case, and your apparent education, experience, mental competency and conduct to determine whether this is a proper waiver of your right to counsel. If, after consideration of these matters, the Court finds that you are capable of defending yourself, it will permit you to proceed without counsel.'' Ultimately the total punishment imposed in *Sheridan* on each defendant (i.e., four consecutive jail sentences of 180 days each) was less severe than that here inflicted on petitioner. The practice followed in *Sheridan* is commendable, and does not appear too great a burden to impose on courts dealing with misdemeanor charges of the complexity and seriousness here shown. In the case at bar there was not even minimal compliance with such constitutional requisites for a valid waiver of the right to counsel, and the judgments of conviction must therefore be set aside.

Despite the infirmity of the original proceedings, however, petitioner remains subject to trial for the offenses charged. (*In re McCoy* (1948) *supra,* 32 Cal.2d 73, 76-77.)

It is ordered that petitioner be remanded to the municipal court for further proceedings in conformity with petitioner's right to counsel, with directions to permit petitioner to withdraw his pleas of guilty if he be so advised; petitioner is to remain on the bail heretofore fixed by this court until further order of the municipal court.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.