[Crim. No. 4647.    Third Dist.    Jan. 4, 1968.]

In re JAMES RAY STOCKER on Habeas Corpus.

Paul Ligda, Public Defender, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Respondent.

PIERCE, P. J.—Petitioner James Stocker, without counsel, was convicted August 17, 1967, on his guilty plea of violation of Vehicle Code, section 14601 (driving while privilege to do so had been refused, suspended or revoked). The plea was entered in the Justice Court of the El Dorado Judicial District, County of El Dorado. The docket sheet of the justice court shows no waiver of the right to counsel. Stocker was sentenced to pay a fine of $289 or to be imprisoned in the county jail for 57 days. Since he was without funds he went to jail. Thereafter a petition for habeas corpus was presented to the superior court and a hearing was held. (The transcript of that hearing is before us.) Judge Johnson of the justice court testified thereat. After the hearing the writ was denied. On the petition to this court for a writ of habeas corpus we issued an order to show cause and also directed that Stocker be released pro tempore on his own recognizance. Our review of the record has convinced us Stocker made no intelligent waiver of counsel and was offered no fair opportunity to do so.

Before proceeding in a criminal matter the court has the obligation to determine ''whether there had been a competent and intelligent waiver with a clear understanding of its nature and effect.'' (*In re Elsholz*, 228 Cal.App.2d 192, 197 [39 Cal.Rptr. 356].)

''Moreover, it is settled that 'The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, *upon the particular facts and circumstances surrounding that case,* including the background, experience, and conduct of the accused.' (Italics added.) (*Johnson* v. *Zerbst* (1938) *supra,* 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357] ; accord, *People* v. *Chesser* (1947) *supra,* 29 Cal.2d 815, 822 [178 P.2d 761, 170 A.L.R. 246].) Manifestly that determination

must be made *before* any plea — guilty or otherwise — is accepted by the trial court, or the right to counsel loses most of its meaning and effectiveness. The making of this determination in a timely fashion is therefore the 'serious and weighty responsibility' of the trial judge. (*Johnson* v. *Zerbst* (1938) *supra,* 304 U.S. 458, 465 [82 L.Ed. 1461, 1467].)

■ As we said in *Chesser* (at pp. 821-822 of 29 Cal.2d), 'The fact that defendant pleaded guilty is not conclusive. . . . In order for a trial judge to determine whether there has been a competent and intelligent waiver of counsel, he must first ascertain whether the defendant clearly understands the nature and effect of his waiver.' More particularly, 'the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he "understands the nature of the charge, the elements of the offense, the pleas *and defenses* which may be available, *or the punishments which may be exacted.*"' (*In re James* (1952) 38 Cal.2d 302, 313 [240 P.2d 596].)" (Italics ours.) (*In re Johnson,* 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420]; see also *In re Smiley,* 66 Cal.2d 606 [58 Cal.Rptr. 579, 427 P.2d 179].)

The facts in the record (which are principally those disclosed in the transcript of the hearing in the superior court) are unusual: A citation had been issued to Stocker for Vehicle Code violations involving mechanical defects of his automobile. On a citation for those offenses he had promised to appear before Judge Johnson on August 21, 1967. Stocker actually appeared on August 17. He bore with him evidence that the mechanical defects had been remedied. He had a temporary driver's license. In the meantime the judge had learned Stocker's right to operate an automobile had been suspended. This, it appears, was because he had not appeared as promised for a San Jose traffic violation. A complaint had issued out of Judge Johnson's court for the driving-during-suspension violation. (Veh. Code, § 14601, subd. (a).[1]) At

---

[1]Vehicle Code, section 14601, subdivision (a), reads as follows: "No person shall drive a motor vehicle upon a highway at any time when his driving privilege is suspended or revoked and the person so driving has knowledge of either such fact.

"Any person convicted under this section shall be punished upon a first conviction by imprisonment in the county jail for not more than six months or by fine of not more than five hundred dollars ($500) or by both such fine and imprisonment and upon a second or any subsequent conviction, within seven years of a prior conviction, by imprisonment in the county jail for not less than five days nor more than one year and by fine of not more than one thousand dollars ($1,000) or by both such fine and imprisonment."

some time—the order of events is not clear—the judge testified he took Stocker into his office. He said that he explained the section 14601, subdivision (a), charge. We quote his testimony from the record: " '[A]s far as the records are concerned, you are wanted in San Jose for failure to answer your signed promise to appear.' He says, 'That has been taken care of,' but we had nothing to show that, and this was out—Then he asked me—His mother wasn't mentioned, but he stated, 'May I go out to the car and talk to Mother?' I said, 'Yes, Mr. Stocker, go out and talk to her.' He was gone a little bit, he come back in and he says, 'Mother has gone on home. I'm ready to go to jail.' Q. Then did you issue a commitment? A. I issued a commitment and called the officer and he went to jail. . . . Q. He was confined pursuant to your commitment? A. Uh huh. For fifty-seven days or $289.00 [Stocker had asserted he had no money], and thirty minutes after then, he must have known or somebody knew, Mr. Ligda [the public defender] called my secretary and demanded that he have a certified copy of the proceedings within one hour, and after then his mother called me, and I never took such a beating in my life. . . ." Judge Johnson was also informed by the mother that she had paid the fine for the San Jose violation "last October or November."

Before that, according to the judge, there had been an arraignment for plea, a plea of guilty, an arraignment for sentence with waivers of time for pronouncing sentence, as well as the contested waiver of counsel, all before sentence was actually pronounced. Judge Johnson testified: "First I went over the violations that he was charged with, which was 26453, defective emergency brake; 27150, defective exhaust system; 5200, no front license plate; and 1251 no valid license in possession."

He stated he had told Stocker of the section 14601 violation. He also said he had read the complaint to Stocker, had informed him of his right to counsel, of his right to a court or jury trial if his plea was not guilty, that he could subpoena and cross-examine witnesses, that "he was allowed counsel at all times . . . and we had a Public Defender if he wanted me to appoint him. . . ." The judge also stated that Stocker volunteered that he was guilty. His testimony: "I says, 'Do you wish to enter your plea at this time?' He says, 'Yes.' Then I went over each violation of the mechanically [sic] violations, and he answered 'Guilty,' and the 14601 of the California Vehicle Code, his answer was 'Guilty.' ''

Stocker's version differs. He testified that when he arrived Judge·Johnson had been handed records by his secretary and thereupon started to explain to Stocker what he was charged with. Stocker testified: ''[S]ome of it wasn't clear because I never been served with anything, and he read me some of the charges, and he never said anything about what I could get or anything like that. He told me, he says, of my legal rights, and . . . he asked me why I didn't take care of this ticket down in San Jose. I told him, I says, 'Well, I was in the service at the time . . . I didn't have a chance. I sent my Mother the money to take care of the ticket.' '' He also said: ''[H]e never let me finish talking . . . and it kind of got me confused. . . . I tried to explain why I pleaded guilty, and he wouldn't let me talk.''

Stocker contended that when he was sentenced he thought it was for the San Jose charge—the one for which he had sent money to his mother when he was overseas[2] so that his fine would be paid.

The foregoing is background. Although Stocker's testimony is positive that he thought he was pleading guilty to a charge brought against him in San Jose and was only pleading guilty because a fine he thought had been paid, had not been, and although Judge Johnson's testimony at least partially corroborates that, we do not rest our decision upon that. ■ We do base our decision upon the facts (1) that Stocker was never informed of lack of knowledge as a defense to a charge of driving with a right to drive suspended, (2) that he was never informed of the possible penalties following a guilty plea.

Regarding the first of these omissions, it is to be noted that a person is only guilty of a violation of section 14601, subdivision (a), when he has *knowledge* of the fact that his privilege of driving has been suspended. (See fn. 1.) There is *no* evidence in this record that defendant had such knowledge, or that the judge informed him lack of knowledge was a defense. All of the evidence is to the contrary.[3]

---

[2]Questioned by Public Defender Ligda he said: ''Q. [Y]ou initially told me you recalled Judge Johnson sent you to jail for a ticket in San Jose? A. He told me that he was dropping the charges on the one that was up here, and that he was going to charge me with the other one down there. Q. Is that what you actually believed? A. Yes, sir.''

[3]Stocker testified on cross-examination by the prosecuting attorney [Mr. Finney]: ''Q. Did he explain to you the difference, the fact you could have a driver's license in your possession and still your driving privilege, the right to use the highways of the State of California would be suspended? A. No, sir. Q. Did you understand that when you applied

As the evidence first quoted above—the judge's own testimony—demonstrated, Stocker had expressly told him he did *not* know his right to drive had been suspended for the San Jose violation.

As regards Judge Johnson's failure to explain the possible punishment for a violation of section 14601, subdivision (a), such failure was tacitly admitted: "Q. Was there any discussion between yourself and the petitioner prior to his waiver of counsel as to what the consequences of a guilty plea might be, or what the punishment might be? A. I don't know as I did. I did tell him—I says, 'Each one of these carries a penalty of $59.00, these other violations.' Q. Did you explain that to him? A. I don't know that I did that thoroughly or not. I couldn't say."

(The charges to which the judge referred were the so-called "mechanically" violations on which he was not sentenced.) He was asked on direct examination by the prosecuting attorney: "You did tell him what the essence of the 14601 charge

---

for this temporary permit? A. No, sir. . . . Q. Well, if your driving privilege had not been suspended and you did have a valid driver's license, then you would have told the Judge, 'Yes, you understood that was a defense to the charge?' A. I have been overseas and I never had no word that my . . . driver's license was suspended or revoked, or anything . . . .''

Judge Johnson's testimony of his instructions to Stocker regarding possible defenses follows: "Q. What defenses did you advise Mr. Stocker were available? A. What? Q. To him? What defenses did you tell him were available to the charges that were pending against him? A. What do you mean? The penalty? Q. No. Defenses that he would have to the charges? A. I don't know what—— Q. Did you tell him what the defenses were? A. Defense was? Q. Yes. What the defenses were to these charges? A. Yes. Q. What defenses did you tell him there were? A. I told him what the defense was—— You mean the violations? Q. No. The defenses to the charges? A. You mean for the Public Defender? Q. No. The defenses that were available? A. What do you mean, 'defense?' Q. Well, there is a charge, there is a criminal charge pending against him. There are defenses to criminal charges. You understand 'defenses,' don't you? A. I don't know what you mean by 'defense.' Q. Don't you understand what a defense—— A. I understand what 'defense' means, but I don't know what you mean in this case. Q. Do you know what the defense is on an allegation? A. Defense means like you're defending the defendant, I imagine. Q. Do you know what defenses exist to a 14601 charge? A. What? Q. Defenses, what a person would have to show you to show that he is not guilty? A. In a trial, yes, it would be testimony, but there was no defense. There was no evidence. He said he was guilty to it. Q. Before he said he was guilty, did you explain to him what possible defenses were available to him? A. He could have a trial on it, he could subpoena witnesses, and they could testify, he could take the stand and testify in his own behalf if he wanted to. Q. I would take it, then, you did not advise him if he had a valid defense—— A. Yes, I did. Yes, I did. Q. What did you do? A. That I would get out subpoenas for him and they could take the stand and testify in his own behalf if he was allowed counsel. Q. Is that the extent of any defense you explained to him? A. Well, practically, yes."

was, but you don't recall if you told him what the punishment for that section was?'' To this question the judge answered: ''I don't know as I did. I couldn't say, I wouldn't say.''

The offense for which Stocker was sentenced provides a maximum punishment for a first offense of six months in the county jail, and for a second offense, a year in the county jail. (See fn. 1.) We apply here the rule of *In re Johnson* (1965) *supra*, 62 Cal.2d at page 335, followed in *In re Smiley* (1967) 66 Cal.2d 606, at page 621 [58 Cal.Rptr. 579, 427 P.2d 179] : '' [I]n cases involving serious misdemeanor charges the courts must make a reasonable and timely effort to determine whether the defendant understands his predicament'' before he can make an intelligent waiver of counsel. It seems obvious that on the record before us Stocker's waiver of counsel was made with no real understanding of his ''predicament.''

It is equally obvious he had not been informed of a substantial defense possibly available (lack of knowledge of the suspension of his license). (*In re James*, 38 Cal.2d 302, 313 [240 P.2d 596] ; *People* v. *Williams* (1967) 252 Cal.App.2d 147, 155-157 [59 Cal.Rptr. 905].) Because of those omissions there was not a knowing and intelligent waiver of counsel.

The writ is granted. Petitioner, now released on his own recognizance, shall be discharged, without prejudice to a valid proceeding on pending charges for violation of section 14601.

Friedman, J., and Regan, J., concurred.