[No. B010063. Second Dist., Div. Six. Dec. 18, 1985.]

In re MARSHALL ROBERT MOSS on Habeas Corpus.

914

COUNSEL

Richard E. Erwin for Petitioner.

No appearance for Respondent.

Michael D. Bradbury, District Attorney, and Michael Schwartz, Deputy District Attorney, for Real Party in Interest.

OPINION

GILBERT, J.—Petitioner, Marshall Robert Moss, seeks review in a writ of habeas corpus of his convictions of driving under the influence, driving

with a suspended license, and his admission to probation violations. We conclude that certain constitutional rights of Moss were violated.

FACTS

On April 28, 1983, Moss appeared in propria persona before the Ventura Municipal Court for arraignment on a misdemeanor complaint charging him in counts I and II with driving under the influence of alcohol (Veh. Code, § 23152, subds. (a), (b)) and, in count III, driving with a suspended license (Veh. Code, § 14601, subd. (a)). The complaint also alleged Moss had been convicted of prior offenses for driving under the influence of alcohol in 1979 and 1982. When we examined the municipal court file, it contained only the original first page of the complaint and a copy of the second page. On page two was the allegation that Moss had been convicted of a prior violation of Vehicle Code section 14601, subdivision (a) on March 15, 1979.

Moss signed and initialed a form entitled "Ventura County Municipal Court—23152—Waiver of Constitutional Rights," a copy of which is set out in an appendix to this opinion.[1] Near the bottom of the front page of the form is a sentence which reads, "[h]aving in mind the rights I will be giving up, and all the possible consequences of my plea, I desire to plead Guilty/No Contest to violation of Section 23152 of the Vehicle Code." On the reverse side of the form, under the paragraph entitled "WAIVER OF ATTORNEY," there appears the following sentence: "I understand I have a right to have a lawyer defend me at all stages of the proceedings, and that if I cannot afford to hire a lawyer, the court will provide one for me. I knowingly and intelligently WAIVE (GIVE UP) my right to a LAWYER." Moss signed his name on the signature line immediately beneath this sentence.

Moss' petition contains a transcript purporting to accurately depict the contents of a tape recording of the proceedings held on April 28, and April 29, of 1983. We have listened to the tape recording of the proceedings, and reviewed the transcript. (See Stewart v. Justice Court (1977) 74 Cal.App.3d 607, 611 [141 Cal.Rptr. 589].)

Initially, the People did not challenge the accuracy of the transcript submitted by Moss. Instead, they relied upon portions of the transcript of the tape recording to support their claim that Moss was duly advised of his

[1]The form sets forth a statement of charges filed against a defendant. It also lists the constitutional rights to be waived in order to plead guilty. A column at the far right of the form provides space for a defendant to initial each item appearing on the form. In addition, a signature line appears at the bottom of the form. On the opposite side of the form, among other things, appear signature lines below paragraphs providing for admissions to prior offenses and a waiver of attorney if appropriate.

constitutional rights. It was not until after we issued our first opinion that the People argued that the tape recording did not include a crucial portion of the proceedings but conceded they had no traditional grounds on which to base a petition for rehearing. We discerned a pause or gap in the recorded conversation. Therefore, we granted a rehearing on our own motion and appointed retired Los Angeles Superior Court Judge George Dell to sit as a referee to take evidence, and to determine certain factual issues concerning that portion of the hearing not captured on tape.

The tape recording revealed that a discussion between the court and Moss took place.

[Judge]: "Okay Mr. Moss. You're charged with driving a vehicle under the influence of intoxicating liquor and driving on a suspended license. Do you understand those charges?

[Pet]: "Yes, Your Honor.

[Judge]: "Do you wish to be represented by an attorney?

[Pet]: "No, Your Honor."

The transcript of the tape recording reflects that no further advisements or inquiries relating to Moss' constitutional rights were made by the court. There was no discussion of the "Waiver of Constitutional Rights" form signed by Moss.

The following discussion between the judge and Moss took place concerning the two prior driving under the influence convictions:

[Judge]: "Do you admit that you were convicted of driving under the influence in Ventura in 1982?

[Pet]: "Yes, sir. I think it was about October.

[Judge]: "October '82?

[Pet]: "Yes, Your Honor.

[Judge]: "And March of '79?

[Pet]: "Uh, I don't know about March '79, Your Honor. I imagine so.

[Judge]: "Well it shows that in '79 you were arrested in February and convicted on March 15.

[Pet]: "This may be so, Your Honor. I, I don't recollect what date.

[Judge]: "Okay. But somewhere in '79 you were convicted of this offense, is that right?

[Pet]: "As far as I know, yes, sir.

[Judge]: "Okay. Two priors are admitted."

A discussion then took place concerning a prior violation of Vehicle Code section 14601. The judge was perplexed because at that time page two of the complaint was missing from the court file. He shared his dilemma with Moss. "The pink sheet shows a prior 14601 but it's not, I don't have a complaint that alleges it." Petitioner tried to help. He told the court: "Does that not include one of those other . . ."

[Judge]: "Well, let me see. Maybe you're right and I'm . . .

[Pet]: "I believe that was sir.

[Judge]: "It says page 1 of 2, but I don't have page 2. . . . Well in order for me to do something about it someone's going to have to file page 2. . . . And it would be helpful to sign page 2."

This illuminating dialogue was interrupted when a messenger delivering flowers appeared and addressed the court. The judge assisted the messenger, and the flowers were presumably delivered to court personnel.[2]

Perhaps the judge had become sidetracked, since there is no acknowledgment of an admission to the prior conviction of Vehicle Code section 14601, nor is there any further discussion concerning that prior conviction. The judge then proceeded to take pleas of guilty to driving under the influence and driving with a suspended license, counts I and III.[3]

When Moss admitted his probation violations, either insouciance or expediency came into full bloom. The judge said: "Okay. And you're also on probation. I've got you here with three cases that you're presently on probation. Do you admit that you're in violation of your probation?"

---

[2] "The flowers that bloom in the spring,
Tra la,
Have nothing to do with the case . . ."
The Mikado, Act II. Sir William S. Gilbert.

[3] The court granted the district attorney's motion to dismiss count II (Veh. Code, § 23152, subd. (b)).

[Pet]: "Yes, Your Honor.

[Judge]: "Okay. Well, Mr. Moss I'm going to have all these matters, refer them to the probation office and set it for a hearing tomorrow at 1:30. We'll see you tomorrow at 1:30 on all these matters."

The next day, April 29, 1983, was not any better for Mr. Moss. He was sentenced to five consecutive one-year terms in the county jail.[4] The judge highlighted the event by commenting: "Well Mr. Moss, you win the prize for the day. You have absolutely no redeeming value in any of these cases." The assessment may have been correct, but, as we shall discuss, some of the methods were wrong.

Moss sought relief by way of habeas corpus in the superior court, arguing that he was denied due process in the probation revocation hearing. On April 2, 1984, the superior court denied his petition for writ of habeas corpus. The court failed to give reasons for the denial of the petition.[5] Moss appealed, claiming only that the imposition of consecutive sentences was improper. The appellate department of the superior court affirmed the convictions on April 3, 1984.

DISCUSSION

I

A. PROCEDURAL OBJECTIONS

1. LACHES

██ The People contend Moss is guilty of laches. He waited nine months following the ruling of the appellate department before he sought relief from this court. A party seeking relief by way of a petition for relief by way of an extraordinary writ is required to move expeditiously. (*In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793]; *Scott* v. *Municipal Court* (1974) 40 Cal.App.3d 995, 996-997 [115 Cal.Rptr. 620].)

A review of the municipal court file reveals that Moss was indigent. The quality of his performance before the municipal court does not necessarily

---

[4]Moss was sentenced to consecutive one-year sentences on each count of the complaint, and consecutive one-year sentences on each of the three probation violations, less credit for time served.

[5]Reticent superior court judges pondering the merits of habeas corpus petitions should keep in mind that a denial without a statement of reasons is contrary to the plain requirements of California Rules of Court, rule 260(e).

demonstrate a capacity to represent himself on a habeas corpus petition. His prior court experiences *alone* no more qualify him to be his own lawyer than a case of the gout qualifies one to practice medicine. Given the paucity of free legal services available to assist indigent misdemeanants with their appeals (see, e.g., *Erwin* v. *Appellate Department* (1983) 146 Cal.App.3d 715, 719 [194 Cal.Rptr. 328]), the delay was attributable to Moss' inability to secure appellate counsel. (See *In re Bower* (1985) 38 Cal.3d 865, 873 fn. 3 [215 Cal.Rptr. 267, 700 P.2d 1269]; *In re Saunders* (1970) 2 Cal.3d 1033, 1040-1041 [88 Cal.Rptr. 633, 472 P.2d 921].) A delay of nine months, under these circumstances, is not a significant delay. (*In re Huddleston* (1969) 71 Cal.2d 1031, 1034 [80 Cal.Rptr. 595, 458 P.2d 507] [two-and-one-half-year delay]; *In re Spears* (1984) 157 Cal.App.3d 1203, 1208 [204 Cal.Rptr. 333] [eighteen-month delay]; *In re Hancock* (1977) 67 Cal.App.3d 943, 945, fn. 1 [136 Cal.Rptr. 901] [nine-month delay].)

## 2. Habeas Corpus in the First Instance

■ The People also argue that Moss raises a number of issues in his petition that were not raised below. A court of review may refuse to issue a writ of habeas corpus when it appears that the application should have been first made in the lower court. (*In re Hillery* (1962) 202 Cal.App.2d 293, 294 [20 Cal.Rptr. 759].)

Where it "is necessary to establish that a defendant has been denied a fundamental constitutional right, resort to habeas corpus is not only appropriate, but required. [Citations.]" (*In re Bower, supra,* 38 Cal.3d at p. 872.) Here, intervention is proper by this court in the first instance because the issues raised involve fundamental due process rights. Further, it affords us the opportunity to provide guidance to the trial court.

We, therefore, entertain the present matter in the first instance. (Pen. Code, §§ 1484, 1508; *In re Bower, supra,* 38 Cal.3d at p. 873; *In re Davis* (1979) 25 Cal.3d 384, 389 [158 Cal.Rptr. 384, 599 P.2d 690]; *In re Banks* (1971) 4 Cal.3d 337, 343 [93 Cal.Rptr. 591, 482 P.2d 215].)

## 3. The Tape Recording and the Evidentiary Hearing

The People take issue with the tape recording insofar as they allege it omits a crucial portion of the proceedings. Although the tape recording does not comply with California Rules of Court, rule 980.5,[6] we have not been provided with evidence that contradicts the discussion captured on the tape.

---

[6]California Rules of Court, rule 980.5 provides for judicial council approval of devices for recording proceedings in the absence of an official court reporter.

The evidentiary hearing conducted by Judge Dell has given us a complete picture of the proceedings. Judge Dell took evidence from various witnesses, including Municipal Court Judge John J. Hunter who presided at Moss' hearings.

Judge Dell found: (1) A complaint had been filed, (2) Moss pled guilty to count I, (3) Moss pled guilty to count III, (4) Moss did not waive his constitutional rights to count III, (5) Moss did not admit any prior violations of Vehicle Code section 14601, and (6) Moss did not waive his constitutional rights to any prior violations of Vehicle Code section 14601. Although we are not bound by Judge Dell's findings, they are entitled to great weight, and we find they are supported by substantial evidence. (*In re Anderson* (1971) 6 Cal.3d 288, 303 [98 Cal.Rptr. 825, 491 P.2d 409].) The evidence of that portion of the hearing that was recorded, and the evidence adduced at the hearing conducted by Judge Dell, establish prima facie grounds for relief on habeas corpus. (*In re Hochberg* (1970) 2 Cal.3d 870, 875, fn. 4 [87 Cal.Rptr. 681, 471 P.2d 1].)

## II

### A. CONTENTIONS

Moss claims that the trial court had no jurisdiction because a verified complaint was not filed. He also claims the procedures used by the municipal court in taking his pleas were deficient under the applicable *Boykin-Tahl-Mills* test. (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]; *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273].)

The People contend that the court had jurisdiction, and gave due regard for Moss' constitutional rights, because:

1. Moss signed a waiver of rights form in which he indicated that he was willing to give up specified constitutional rights and intended to plead guilty to the drunk driving charge.

2. Moss answered in the negative when quizzed by the court as to whether he wished to have an attorney appointed to represent him.

3. The trial court collectively advised all defendants appearing in its court for arraignment of their constitutional rights.

4. The trial court entered a finding that Moss understood and intelligently waived all of his rights.

Because Moss seeks relief by way of habeas corpus, he has the burden of establishing that his pleas were not proper. (*In re Bower, supra,* 38 Cal.3d at p. 872; *People* v. *Barlow* (1980) 103 Cal.App.3d 351, 373 [163 Cal.Rptr. 664].) Moss has partially carried his burden.

### B. The Complaint

■ Moss complains that the taped conversation between Moss and Judge Hunter reflects that no valid complaint was on file at the time of his plea. We asked the referee whether a complaint was filed. In his findings, the referee stated, "Yes. The referee takes judicial notice that upon the date of his examination of Ventura Municipal Court File No. 384940-3, a fully completed and signed complaint was not present. The first page of an original complaint, filed August 28, 1983, alleging three misdemeanors and two prior offenses, was present, with two carbon copies; a carbon copy of a second page, alleging a third prior offense, and bearing the typed name of 'Wm. J. Jackson' (apparently a California Highway Patrol officer) was also present. [¶] From listening to the oral proceedings on the admittedly incomplete tape recording, it appears that the second page of the complaint was indeed initially missing, as noted by Judge Hunter. From the testimony of Deputy District Attorney Russell and Judge Hunter, the referee infers that the District Attorney's copy of the second page was signed by Mr. Russell, used for the purpose of arraigning petitioner, and filed. Somehow it did not get physically into the file or was lost, mislaid or removed. Physical absence from the file of a portion of the complaint is not the sole criterion as to whether or not the complaint was 'filed.' [¶] It is common knowledge that documents in court files sometimes disappear by virtue of a variety of causes. The referee will not speculate as to what happened to page 2 of the complaint in *People* v. *Moss,* but is satisfied that a complaint was in fact filed."

We agree with the People that Penal Code section 973 allows the use of a copy of the complaint in lieu of the original when the original has been lost or destroyed.

### C. Pleas of Guilty to Counts I and III

We asked the referee to determine whether Moss pled guilty to count I. In the referee's findings of fact and report, he answered the question as follows: "Yes. Notwithstanding the gap on the tape, the referee is fully satisfied that petitioner executed a Waiver of Constitutional Rights as to that count, which included a statement of his desire to plead guilty to that count, that petitioner did in fact plead guilty to that count, and that Judge Hunter's

testimony and that of his court clerk as to normal court procedures (including the use of the 'pink sheet') bear out the rendition of the plea."

■ Although the "Waiver of Constitutional Rights" form does not provide for an express and unequivocal plea of guilty, but rather indicates that Moss "desires" to plead guilty, this is sufficient to establish an actual plea of guilty.[7] In most cases, a defendant may enter a plea of guilty without any particular incantation. (*People* v. *Martin* (1964) 230 Cal.App.2d 62, 64 [40 Cal.Rptr. 700]; *People* v. *Niendorf* (1961) 197 Cal.App.2d 594, 599 [17 Cal.Rptr. 467].) "A defendant's expression of guilt, in order to constitute a plea of guilty, must be made in response to a question by the court as to how the defendant pleads and must be couched in language indicating that the defendant is formally making a plea rather than merely making an informal and spontaneous statement as to his guilt." (*People* v. *Sturdy* (1965) 235 Cal.App.2d 306, 311 [45 Cal.Rptr. 203].) Here, the plea form, together with the judge's procedure in asking Moss how he pled to count I, constituted an unequivocal plea to that count.

In response to our question, "Did Moss plead guilty to count III?", the referee stated that he was "satisfied that notwithstanding the gap on the tape, Judge Hunter arraigned petitioner on count III and that petitioner did in fact respond 'Guilty' when he was asked to plead. The judge's and the clerk's usual procedures in the entries on the docket (and 'pink sheet') are consistent with such a plea and the referee believes one was in fact entered."

### D. WAIVER OF CONSTITUTIONAL RIGHTS

■ The trial court had before it a "Waiver of Constitutional Rights" form. Moss signed the waiver form under the paragraph providing for a waiver of attorney, and the trial court asked him if he wished to be represented by an attorney. Moss answered "no." This constitutes an effective waiver of counsel. (*People* v. *Paradise* (1980) 108 Cal.App.3d 364, 366 [166 Cal.Rptr. 484]; *Benge* v. *Superior Court* (1980) 110 Cal.App.3d 121, 129 [167 Cal.Rptr. 714].)

■ The court may rely upon such a validly executed waiver form in assessing whether a plea is voluntary and in assessing whether defendant

---

[7]Desire is defined as follows: "to long or hope for . . . to express a wish for: REQUEST." (Webster's New Collegiate Dict. (1981) p. 305.) It thus may be argued that one's desire to perform an act is scarcely the equivalent of actual performance.

As Aristotle pointed out in his Politics, "It is the nature of desire not to be satisfied. . . ."

Like the "Streetcar" so named, desire often takes you where you don't really want to go.

Nevertheless, the desire to plead guilty along with all the other statements contained on the plea form unmistakably indicate an intent to plead guilty.

has waived his constitutional rights. ■ "[A] guilty plea entered through counsel is valid so long as it is accompanied by an adequately documented showing that the defendant was aware of his constitutional rights and knowingly and intelligently waived them . . . ." (*Mills* v. *Municipal Court, supra,* 10 Cal.3d 288, 305.)[8]

■ Even when a defendant is not represented by counsel, a waiver form, such as the one here, is sufficient, provided the court is assured that a defendant has signed and understands the form.

Despite heavy calendars faced by overburdened municipal court judges, proceedings which involve the entry of a guilty plea by an unrepresented defendant require that the trial judge make an effort to see that the accused has been informed of his predicament so as to render him capable of making an intelligent and knowing waiver of his rights. (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 465 [82 L.Ed. 1461, 1467, 58 S.Ct. 1019, 146 A.L.R. 357]; *In re Stocker* (1968) 257 Cal.App.2d 613, 619 [65 Cal.Rptr. 240].)

It has long been held that the determination of whether there has been an intelligent waiver of constitutional rights "must depend, in each case, upon the *particular facts and circumstances surrounding that case,* including the background, experience, and conduct of the accused." (Italics added.) (*Johnson* v. *Zerbst, supra,* 304 U.S. 458, 464 [82 L.Ed. 1461, 1466].)

"[W]aivers of constitutional rights must, of course, be 'knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' [Citation.]" (*People* v. *Mroczko* (1983) 35 Cal.3d 86, 110 [197 Cal.Rptr. 52, 672 P.2d 835].) ■ A reviewing court cannot simply presume such waivers from a silent record; the record itself, or other evidence, must show an intelligent and knowing act by the defendant. (*Carnley* v. *Cochran* (1962) 369 U.S. 506, 515-516 [8 L.Ed.2d 70, 76-77, 82 S.Ct. 884]; *In re Johnson* (1965) 62 Cal.2d 325, 334 [42 Cal.Rptr. 228, 398 P.2d 420].)

■ The waiver form states that Moss was advised of and understands his constitutional rights. From the plea form itself, we cannot tell if Moss was advised of his constitutional rights prior to signing the form, or whether the information contained in the form itself constitutes the advisement and waiver of his constitutional rights. In either case, the plea form itself which Moss signed indicates he knowingly and intelligently waived his rights. In

---

[8]The defendant in *Mills* had an attorney, who attested, both in writing and in open court, that defendant understood and made a knowing, intelligent, and voluntary waiver of his constitutional rights.

addition, the trial judge testified that it was his practice to ask a defendant who has signed a waiver form if he has read and understood the form, and whether he wishes to plead guilty to the charges. Moreover, Moss makes no claim that he did not sign or understand the plea form. (*People* v. *Sumstine* (1984) 36 Cal.3d 909, 922 [206 Cal.Rptr. 707, 687 P.2d 904].)

The trial court signed a portion of the plea form under a heading entitled, "Findings and Orders." The printed language on the form states: "The Court finds that:

"1. Defendant and/or his attorney appeared in open court and entered his plea and admission(s).

"2. Defendant has knowingly, intelligently, and understandingly waived his rights as set forth above.

"3. Defendant understands the nature of the charge and the consequences of his plea and admission(s).

"4. There is a factual basis for the plea.

"5. Defendant's waivers of his rights, and his plea and admission(s), are free and voluntary."

Although the trial court had grounds to find a knowing and intelligent waiver of rights as to count I by virtue of the plea form itself and for finding that Moss had pled guilty to counts I and III, it had no basis for finding that Moss waived his rights to count III.

The referee found that Moss did not waive his constitutional rights concerning count III. He stated in his findings that "Judge Hunter testified that it was not his policy to provide any statement of, nor obtain any waiver of constitutional rights other than the group statement to defendants and the written 23152 waiver, except an inquiry to the effect of 'Do you understand your rights and waive them?' [¶] Apart from the form recitals in the docket, there is nothing further to demonstrate that petitioner knew he had (and waived) the same rights with respect to count III that he had (and waived) as to count I; there is nothing to reflect that he knew the possible consequences of a guilty plea to count III, so clearly spelled out in the 23152 waiver as to count I." These findings of the referee establish that Moss was prejudiced by the trial court's failure to advise him of his rights. (See *In re Ronald E.* (1977) 19 Cal.3d 315, 321 [137 Cal.Rptr. 781, 562 P.2d 684].) They also support Moss' claim that he was denied his constitutional rights concerning count III. (*People* v. *Sumstine, supra,* 36 Cal.3d 909, 914, 922.)

██ Check marks on the docket sheet indicate that Moss had voluntarily and understandingly waived his constitutional rights to both counts I and III. A judge is not required to orally articulate his findings that a defendant's waiver of his constitutional rights is voluntarily and intelligently made. (*People* v. *Garcia* (1979) 98 Cal.App.3d Supp. 14, 17-18 [159 Cal.Rptr. 487].) Nevertheless, a judge's signature below preprinted findings on a waiver form, and check marks indicating waivers of constitutional rights on a docket sheet are meaningless in the face of evidence that discloses no support for these findings. ██ Just as a reporter's transcript will generally prevail over the clerk's transcript when the two are in conflict (*People* v. *Smith* (1983) 33 Cal.3d 596, 599 [189 Cal.Rptr. 862, 659 P.2d 1152]), so here, too, the tape recording of the proceedings and the findings of the referee, which we find to be supported by substantial evidence, prevail over the inconsistent docket sheet.

██ The waiver form was of no value in informing Moss of his constitutional rights with respect to count III (driving with a suspended license). The waiver form contained information concerning the nature of the offense and the consequences of a plea to count I (driving under the influence), but no information concerning count III. The waivers to count I do not constitute waivers to count III, for the reason that waivers to one count do not automatically transfer to another. Despite there being no waivers to count III, the docket sheet reflects that petitioner understood the nature of the charges and the consequences of his conviction to that count.

A waiver of rights must be based upon something more than speculation. (*In re Sutherland* (1972) 6 Cal.3d 666, 671 [100 Cal.Rptr. 129, 493 P.2d 857].) Here, a finding that Moss waived his rights to count III was based on something less than speculation. Findings of the trial court will be upheld on appeal, provided that there is evidence which will reasonably support the conclusions reached by the trial court. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *Booth* v. *Robinson* (1983) 147 Cal.App.3d 371, 377 [195 Cal.Rptr. 130].) No evidence supports the conclusions reached by the trial court as to count III.

The court collectively advised all defendants of their rights at the beginning of the calendar. The People suggest this satisfies the requirement of advisement of rights concerning count III. Even though the court collectively advised all defendants of their rights, the court was nevertheless required to take either written or oral waivers of Moss' constitutional rights, to inquire of him whether he was present in court when the collective rights were read, and to inquire whether he understood them. (*In re Johnson, supra,* 62 Cal.2d 325, 332-333.)

## III

### THE VIOLATION OF PROBATION HEARING WAS DEFICIENT UNDER THE STANDARDS SET FORTH IN *PEOPLE* v. *VICKERS* (1972) 8 Cal.3d 451

 The California Supreme Court in *People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313], held that probationers were entitled to due process prior to the revocation of probation. The *Vickers* court found that the minimum requirements of due process at the revocation hearing must include:

(a) Written notice of the claimed violations;

(b) Disclosure to the probationer of the evidence against him;

(c) An opportunity to be heard in person and to present witnesses and documentary evidence;

(d) The right to be represented by counsel;

(e) The right to confront and cross-examine adverse witnesses;

(f) A neutral and detached hearing officer; and

(g) A written statement of reasons for revocation of probation. (*Id.*, at pp. 459-462.)

 It is undisputed that petitioner received no written notice of his probation violation. The question of the probation violation arose in the following casual manner:

[Judge]: "Okay. And you're also on probation. I've got you here with three cases that you're presently on probation. Do you admit that you're in violation of your probation?

[Pet]: "Yes, Your Honor."

The municipal court proceedings did not even approach compliance with the requirements of *Vickers*. The judge neglected to identify the cases by numbers, and neglected to state the charges, and the terms and conditions of probation. In addition, there was no compliance with Penal Code section 1203.2, subdivision (b), which requires a notice of motion to revoke probation.

In the middle of section 6(d) of the form entitled "Other consequences" is the following sentence: "This plea may also subject me to additional penalties in any other case in which I am on probation." This statement, although undeniably true in this case, does not comply with the requirements of *Vickers*.

Due process calls for such procedural safeguards as the particular circumstances demand. (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593]; see also *People* v. *Coleman* (1975) 13 Cal.3d 867, 894-895 [120 Cal.Rptr. 384, 533 P.2d 1024]; *In re Law* (1973) 10 Cal.3d 21, 27-28 [109 Cal.Rptr. 573, 513 P.2d 621].) But there are clear-cut limits to flexibility lest it distort due process beyond recognition.[9]

The conviction of a probationer of a new crime does not dispense with the requirement that there be a formal revocation of probation hearing. (*In re Flores* (1983) 140 Cal.App.3d 1019, 1024 [190 Cal.Rptr. 388].) The late Chief Justice Wright admonished the trial bench that it "should bear in mind that even when a probationer has been duly convicted of a new crime, he is entitled to a formal revocation hearing before his probation is revoked . . . . [T]he trial court which sentences the probationer for the new offense may not, simply because it happens to have jurisdiction over the grant of probation for the prior offense, summarily revoke that probation at the time of its imposition of sentence for the new offense." (*People* v. *Coleman, supra,* 13 Cal.3d at p. 895, fn. 22.)

A probationer may, of course, waive his *Vickers* rights. (*In re La Croix* (1974) 12 Cal.3d 146, 153 [115 Cal.Rptr. 344, 524 P.2d 816].) The Waiver of Rights form was inadequate to constitute such a waiver.

## CONCLUSION

We do not suggest that pleas of guilty, waivers of constitutional rights, and admissions to prior convictions in municipal court be transcribed by official court reporters or by any other method. Nor do we imply that those municipal courts that do transcribe their proceedings discontinue the prac-

---

[9]An accused's right to notice of pending charges is hardly a new concept in this state. Even in those rough and tumble days of frontier justice, when expediency required a considerable amount of flexibility in the course of criminal proceedings, it was recognized that a defendant had the right to "be fully apprised of the charges against him, so that he may be prepared for his defense . . . ." (*People* v. *Wallace* (1858) 9 Cal. 30, 32.) Admittedly, the court in *Wallace* stretched the concept of fair notice beyond reasonable limits by holding, in effect, that although the indictment read that the defendant did "kill and murder" the victim, it neglected to allege that the victim died. The *Wallace* court's insistence of notice of pending charges, nonetheless, remains a viable concept. (*In re Hess* (1955) 45 Cal.2d 171, 174-175 [288 P.2d 5].)

tice. Instead, we stress: findings must be adequately supported whether the proceedings are transcribed or not. Judicial integrity demands strict adherence to this principle of law.[10]

We are also mindful that the prosecution did not create the problems presented in this appeal. We suggest that when it appears that guilty pleas, admissions to prior offenses, and admissions to probation violations taken by the court are constitutionally insufficient, the prosecution should ask the court if it may inquire of a defendant concerning the waiver of constitutional rights. Conceivably, this approach could preserve convictions that would otherwise require reversal, and also save the expense of additional court proceedings.

## DISPOSITION

We conclude that Moss was not properly advised of the following:

1. His rights as to count III,

2. His prior conviction of Vehicle Code section 14601,

3. His probation violations.

We further conclude that Moss did not intelligently waive his rights as to the following:

1. Count III,

2. His prior Vehicle Code section 14601 conviction, and

3. His probation violations.

Therefore, the orders of the municipal court relating to Moss' plea of guilty to count III, his admission to violations of probation, and his sentencing, are vacated. The matter is remanded for further proceedings in accordance with the views stated in this opinion.

---

[10]It also gives credence to the Lord Chancellor's statement that
 "The Law is the true embodiment
 Of everything that's excellent.
 It has no kind of fault or flaw,
 And I, my Lords, embody the Law."
Iolanthe, Act I, Sir W. S. Gilbert.

The writ is discharged.

Stone, P. J., and Abbe, J., concurred.

# APPENDIX