Filed 11/24/14  P. v. Odom CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064625 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE322620) |
| TRACY LAMONT ODOM, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Kenneth J. Sargoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Tracy Lamont Odom appeals from an order revoking probation. Odom contends that the trial court erred in revoking his probation without holding a probation revocation hearing. We conclude that Odom waived his right to a contested revocation hearing and affirm the order revoking probation.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2012, Odom pled guilty to one count of robbery (Pen. Code, § 211). Two months later, the trial court imposed a five-year prison term, but stayed execution of the sentence and placed Odom on three years of formal probation, subject to various conditions. Among the conditions were that Odom not violate any laws (condition 6a), complete a substance abuse counseling program (condition 7d), complete a residential drug treatment program (condition 9a), and not knowingly possess or use controlled substances (condition 9c).

At the hearing at which the court placed Odom on probation, the court issued the following admonishment, "You get out on probation, [and] you pick up a new felony, I'm

2

going to do you for the five,[1] plus what I give you on the new case. We've got nothing to talk about."

In May 2013, an order to show cause to revoke Odom's probation was issued based on Odom's alleged failure to comply with probation conditions 6a, 9a, and 9c.

The trial court held a probation revocation hearing on May 22. At the revocation hearing, the trial court reviewed its admonishment to Odom at the initial probation hearing. The court acknowledged that its admonishment had suggested to Odom that a mere violation of probation, without a new felony charge, would not be sufficient to "trigger that five-year stay[ed] commit." The court then stated, "I must honor my commitment to Mr. Odom with regards to the deal that we cut when he was originally sentenced here."

Odom then personally admitted having violated the terms of his probation and waived his right to a probation revocation hearing. After an explanation of the nature of the violation from defense counsel, the trial court interrupted counsel and stated, "When Mr. Odom leaves today, there will be no doubt in anyone's mind what is going to trigger that five-year commit. Probation is revoked and reinstated." The court added, "If he fails to complete the program; if he picks up a new case; if he violates any felony laws; if he

---

1    It appears that the trial court intended to state that if Odom were charged with a new felony while on probation, the court would lift the stay of execution on the five-year prison sentence.

3

tests dirty, he will go for five years. Now we are all clear. This is by all measures Mr. Odom's last chance."

In July 2013, Odom's probation officer arrested Odom for failing to attend and successfully complete a substance abuse counseling program (condition 7d) and failing to comply with the condition that he not use or possess controlled substance (condition 9c). In her report, the probation officer stated that Odom had tested positive for amphetamine and methamphetamine on three occasions in June and July 2013, that he had missed drug testing on three occasions, and that a substance abuse treatment provider had indicated that Odom's attendance and participation in the substantive abuse program was "unsatisfactory." The probation officer submitted a declaration in which she stated that Odom had violated the terms of his probation by violating conditions 7d and 9c and an order to show cause to revoke probation was issued.

A hearing was scheduled for July 15. At the hearing, Odom's counsel began by stating, "Mr. Odom is going to enter an admission." Defense counsel and the court then began to discuss the procedural history of the case, including the terms of Odom's probation.

During this discussion the court stated:

> "He next appeared on [May 22]. Probation was reinstated, the notation being defendant is ordered to complete a residential treatment program of no less than six months; if defendant failed to complete [the residential treatment program], he gets a new case, or has any other violations of probation, the court will impose an execution of the stayed term.

4

"So I think what happened was, when I originally took Mr. Odom's plea, I intended to give him five years in state prison and I did not clarify the conditions upon which the execution of the sentence would be triggered. I reviewed the transcript. The assessment was accurate and if my recollection is correct, I rectified the problem on [May 22], indicating that it was a five-year prison commit stayed on condition that he do the items I just mentioned.

"If he admits his violation at this time, he is doing the five years. I don't see where there is anything else to talk about. He had more opportunities than most get, due to my errors, and his opportunities have run."

Defense counsel responded in part by stating:

"Your Honor, just to kind of indicate what's happened since the 22nd, as you see, Mr. Odom—I don't know whether it was through probation that he was working to get into a residential rehab or on his own, but what happened is he didn't get in residential rehab. He was still on outpatient status. That's where the violations come from, his unexcused absence and positive tests. That's it. No other behaviors except his lack of success at the outpatient program."

Defense counsel then suggested that the court order Odom into a residential rehabilitation program because that was the court's "initial intent."

The court responded:

"My intent was he was to comply with all terms and conditions of probation. I was ready to send him two appearances ago. . . . [O]n May 22nd, I made it very clear what was going to trigger the commit. He has violated. He failed to complete, and he tested dirty. We are done. The stayed five-year commit will go into effect."

5

Odom timely appeals from the July 15, 2013 order revoking probation.[2]

## III.

## DISCUSSION

A.   *The trial court did not err in revoking Odom's probation*

Odom claims that the trial court erred in revoking his probation without either

accepting his admission that he violated probation or holding a hearing at which the

People proved that he had violated probation.  We conclude that the trial court properly

revoked Odom's probation after Odom waived his right to a contested probation

revocation hearing.[3]

---

[2]     The electronic record contains a scanned copy of the envelope containing Odom's notice of appeal.  The envelope bears a September 13, 2013 postmark, the 60th and final day on which a notice of appeal could be filed.  (Cal. Rules of Court, rule 8.308(a).) Thus, the notice of appeal was timely filed pursuant to the prison delivery rule.  (See *In re Jordan* (1992) 4 Cal.4th 116, 130 ["a prisoner's notice of appeal is deemed to have been filed in the office of the appropriate county clerk on the date, within the filing period . . . on which it was delivered to the prison authorities"]; Cal. Rules of Court, rule 8.25(b)(5) ["If the clerk receives a document by mail from an inmate . . . in a custodial institution after the period for filing the document has expired but the envelope shows that the document was mailed or delivered to custodial officials for mailing within the period for filing the document, the document is deemed timely.  The clerk must retain in the case file the envelope in which the document was received."].)

[3]     The People contend that Odom's appeal must be dismissed because he admitted violating probation and failed to obtain a certificate of probable cause.  (Pen. Code, 1237.5 [ providing that no appeal shall be taken from a "revocation of probation following an admission of violation," except where the trial court has executed and filed a certificate of probable cause].)  We reject this argument because Odom did not admit violating the terms of his probation at the hearing.  However, for the reasons stated in the text, we conclude that Odom did waive his right to a contested hearing on revocation.

1.      *Governing law*

Probationers are entitled to due process protections prior to revocation, including the right to be heard in person, the right to present witnesses and documentary evidence and the right to confront and cross-examine adverse witnesses. (See *People v. Vickers* (1972) 8 Cal.3d 451, 457-458 (*Vickers*).)

"[A] probation revocation hearing may be waived." (*People v. Martinez* (1975) 46 Cal.App.3d 736, 742, citing *Vickers, supra*, 8 Cal.3d. at p. 457, fn. 6; see also *In re Moss* (1985) 175 Cal.App.3d 913, 930 ["A probationer may, of course, waive his *Vickers* rights"].) Further, a probationer can waive the right to a contested hearing through his conduct and/or that of his attorney. (See *People v. Dale* (1973) 36 Cal.App.3d 191, 194-195 (*Dale*); *People v. Martin* (1992) 3 Cal.App.4th 482, 486 (*Martin*).)

In *Dale*, the appellant contended that an order revoking probation should be reversed because the trial court had failed to conduct a proper probation revocation hearing. The *Dale* court described the probation revocation hearing in relevant part as follows:

> "A hearing on revocation of probation and sentence was held on February 16. Defense counsel stipulated that the matter might be heard and determined upon a supplemental probation report ordered by and furnished to the trial court. Acknowledging that the report was 'negative,' counsel argued against a state prison sentence based upon the remoteness of the crimes and appellant's efforts at rehabilitation. Appellant personally sought to convince the trial court that he should be recommitted to the California Rehabilitation Center. . . . Having read and considered the supplemental report, the trial court sentenced appellant to state prison for the time prescribed

7

by law with credit for the period he was previously incarcerated." (*Dale, supra*, 36 Cal.App.3d. at p. 193.)

The *Dale* court concluded that the appellant had waived his right to a contested probation revocation hearing through the "conduct of counsel in submitting an alleged violation of probation upon the probation report," and appellant's "acquiesc[ence] by silence . . . ." (*Dale, supra,* 36 Cal.App.3d. at p. 195.)

In *Martin*, *supra*, 3 Cal.App.4th at page 486, the appellant claimed that the trial court had denied him his right to due process by revoking probation and imposing sentence without holding a formal probation revocation hearing. The *Martin* court acknowledged, "The record in the present case discloses neither a formal probation revocation hearing nor an express waiver by appellant of his right to such a hearing." (*Ibid.*) However, the *Martin* court concluded that appellant had "waived his right to insist on a revocation hearing by filing a statement in mitigation which acknowledged that he would be sentenced . . . and failing to object at the sentencing hearing either to the sentencing procedure or to the grounds for revocation." (*Ibid.*) The *Martin* court added, "[E]ven if we were to conclude it was error to sentence appellant without a prior hearing, remand would be a meaningless gesture," because appellant "admitted the fact of the probation violation in his statement to the probation officer." ( *Ibid.*)

2.      *Application*

As in *Dale* and *Martin*, the record in this case does not contain an express waiver of Odom's right to a contested probation revocation hearing. Nevertheless, as in both

8

*Dale* and *Martin*, Odom's counsel did not dispute the probation officer's allegation that Odom had violated the terms of probation. Odom's counsel did not merely fail to dispute the probation violation allegations by submitting the matter on the probation report (*Dale, supra,* at p. 36 Cal.App.3d at p. 195) or filing a sentencing memorandum (*Martin*, *supra*, 3 Cal.App.4th at p. 486). Rather, at the July 15 hearing, Odom's counsel *acknowledged* that Odom had violated the terms of his probation by arguing that Odom's failure to enroll in a residential treatment program (which itself was a condition of probation) was the reason for Odom's unexcused absences from his substance abuse treatment program and his "dirty tests." Counsel's argument at the July 15 hearing concerned only the proper disposition of the case in the wake of the assumed violations.

In addition, as in *Dale* and *Martin*, after the trial court revoked probation without holding a contested hearing, neither Odom nor his counsel objected or indicated that Odom wished to contest the court's finding that he had violated the terms of probation. (*Dale, supra,* at p. 36 Cal.App.3d at p. 195 [stating that probationer may waive right to contested revocation hearing where probationer "acquiesces by his silence"]; *Martin*, *supra*, 3 Cal.App.4th at p. 486 [noting that probationer did not object to the grounds for revocation].) Under these circumstances, we conclude that Odom's right to contest the probation violation allegation was "waived by conduct of counsel" and Odom's "acquiesce[cence] by his silence." (*Dale, supra,* at p. 195.)[4]

---

4      While we conclude that the conduct of Odom and his counsel effectuated a waiver of Odom's right to a contested revocation hearing, we observe that this appeal could have

9

Accordingly, we conclude that the trial court did not err in revoking Odom's probation without holding a contested probation hearing.

## IV.

## DISPOSITION

The order revoking probation is affirmed.

                                        AARON, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

---

been avoided if the trial court had obtained either an express waiver of the right to a contested probation revocation hearing or an admission of the alleged probation violations from Odom.

10