Filed 4/9/15  P. v. McGhee CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059544 |
| v. | (Super.Ct.Nos. RIF1102902 & RIF1103074) |
| TIWON GODFREY MCGHEE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

In a plea to the court, defendant and appellant Tiwon Godfrey McGhee, in propria persona, pled guilty to grand theft of a firearm (Pen. Code, § 487, subd. (d)(2))[1] and possession of a firearm by a felon (former § 12021, subd. (a)(1)). Defendant also admitted that he had suffered four prior prison terms (§ 667.5, subd. (b)) and two prior serious and/or violent felony strike convictions (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A)). After the trial court struck one of defendant's prior strike convictions pursuant to section 1385, defendant was sentenced to a total term of 11 years four months in state prison with credit for time served. On appeal, defendant argues that his guilty pleas and admissions must be vacated because he did not knowingly waive his constitutional rights prior to the guilty pleas and admissions. We reject defendant's contentions and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND[2]

On June 9, 2011, Leon Martin, a private paralegal, was driving defendant, a client, to a friend's house. Defendant was acting strangely and stated that people were after him. Defendant noticed a handgun Martin had placed in the driver's side door and grabbed the gun. Defendant then fled the area on a bicycle he found in a random yard. Martin immediately notified the police of the incident.

---

[1] All future statutory references are to the Penal Code, unless otherwise stated.

[2] The factual background is taken from the probation officer's report.

Six days later on June 15, 2011, deputies responded to a call in reference to an adult male with a firearm. Upon arrival, deputies spoke with defendant's girlfriend, who stated that she was involved in an argument with defendant. She was fearful of defendant because he had mental disabilities and was in possession of a gun. Defendant confirmed that he had been arguing with his girlfriend, but claimed that she had been acting strangely and had hired someone to kill him. Defendant denied having a gun, but stated he had seen a gun in an abandoned house nearby. The deputies searched the area and found a gun in a patch of dirt behind a cement wall. After waiving his constitutional rights, defendant admitted that he had placed the gun behind the wall. He claimed that a friend had given the gun to him, and the serial number of the gun had already been altered. Defendant was arrested and taken into custody.

On August 8, 2011, a felony complaint was filed under case No. RIF1102902, charging defendant with one count of grand theft of a firearm. (§ 487, subd. (d)(2).) The complaint further alleged that defendant had suffered four prior prison terms (§ 667.5, subd. (b)) and one prior serious and violent felony strike conviction (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)).

On September 1, 2011, an information was filed under case No. RIF1103074, charging defendant with one count of possession of a firearm by a felon. (Former § 12021, subd. (a)(1).) The information further alleged that defendant had suffered four prior prison terms (§ 667.5, subd. (b)) and two prior serious or violent felony strike convictions (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A)).

3

On November 14, 2011, defendant moved to represent himself in both cases. The court granted the motion.

On February 27, 2012, the People filed a motion to consolidate case Nos. RIF1102902 and RIF1103074. The court granted the motion.

On April 17, 2012, an amended information was filed under case No. RIF1102902, charging defendant with one count of grand theft of a firearm (§ 487, subd. (d)(2)) and one count of possession of a firearm by a felon (former § 12021, subd. (a)(1)). The information further alleged that defendant had suffered four prior prison terms (§ 667.5, subd. (b)) and two prior serious and/or violent felony strike convictions (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A)).

On May 1, 2012, defendant represented himself at a trial readiness conference. At that conference, defendant discussed with the court the discovery he would need before proceeding to trial. Defendant also informed the court that he intended to subpoena a witness. As the conference continued, defendant admitted to the gun possession charge and indicated that he wanted to negotiate a plea deal. Defendant indicated that he had previously proposed a plea deal in which he would serve 10 years in prison, but the People rejected the offer. The court stated that it would consider the mitigating circumstances surrounding the offenses, but that it could not promise defendant a specified sentence. The court also informed defendant that he could proceed to trial on the charges or plead guilty and "throw yourself on the mercy of the court." Defendant indicated that he would plead guilty. The court then informed defendant that if he wished to plead guilty there was a form he needed to complete. After the court received

4

defendant's assurance that he could read and understand the form, the court called a 10 minute recess to allow defendant to review and sign the plea form. Defendant initialed and signed the plea form. In the plea form, defendant noted that he would be pleading guilty to both counts and admitting the prior prison term and prior strike conviction allegations.

Following the recess, the court noted that it had received defendant's signed plea to the court. The court examined defendant's plea form and the following colloquy occurred between the trial court and defendant:

"THE COURT: Did you go over this yellow [plea] form with yourself?

"DEFENDANT McGHEE: Yes.

"THE COURT: Are those your initials and signatures?

"DEFENDANT McGHEE: Yes.

"THE COURT: Did you understand everything?

"DEFENDANT MCGHEE: Yes.

"THE COURT: Do you have any questions at all?

"DEFENDANT McGHEE: No.

"THE COURT: Do you give up all these rights so you can admit your guilt?

"DEFENDANT McGHEE: Yes."

Defendant thereafter pled guilty to counts 1 and 2, and admitted his prior convictions allegations. The trial court found the plea and admissions were entered into freely and voluntarily. The trial court also found the facts as stated in the probation report served as a factual basis for the offenses. The clerk's minute order states, "Court

finds plea is free and voluntary. Court finds [defendant] knows and understands constitutional rights, nature of charges and consequences of plea." The clerk's minute order further noted that the court had advised defendant of his constitutional rights and that after examining defendant, the court found defendant had the ability to understand and did understand his constitutional rights. The clerk's minute order also stated that defendant's pleas and admission of prior convictions were the result of defendant expressly, knowingly, understandingly, and intelligently waiving his constitutional rights.

The sentencing hearing was held on June 13, 2012. At that time, the trial court struck one of defendant's prior strike convictions pursuant to section 1385, and sentenced defendant to a total term of 11 years four months in state prison with credit of 566 days for time served.

On June 12, 2013, defendant filed a writ petition in this court seeking leave to file a late notice of appeal. (See *In re McGhee*, case No. E058913.) On August 6, 2013, this court granted defendant's petition and ordered the superior court clerk to consider a late notice of appeal timely. (*Ibid.*)

On August 30, 2013, defendant filed a notice of appeal, challenging the sentence or other matters occurring after the plea, as well as the validity of the plea. Defendant also requested a certificate of probable cause alleging that he was not competent to make his own decisions due to mental health issues, and that the court took advantage of him due to those issues. The trial court denied defendant's request for certificate of probable cause on September 3, 2013.

II

DISCUSSION

On appeal, defendant seeks to have his guilty pleas and admissions set aside on the ground that the trial court did not properly advise him of his constitutional rights prior to his guilty pleas and admissions. He further argues that the error was not harmless because the record does not show defendant's waiver was knowing and intelligent under the totality of the circumstances.

The People respond the appeal must be dismissed because defendant did not obtain a certificate of probable cause. In the alternative, the People maintain defendant's contention fails because defendant properly waived his constitutional rights and his guilty pleas and admissions were knowingly and intelligently made and that any error was harmless.

A.    *Failure to Obtain a Certificate of Probable Cause*

Section 1237.5 states, "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court."

Section 1237.5 is not a pointless technicality. By requiring a defendant who has pleaded guilty to obtain a certificate of probable cause to appeal, section 1237.5 promotes

judicial economy by weeding out frivolous guilty plea appeals.  (*People v. Mendez* (1999) 19 Cal.4th 1084, 1095.)  "Its assumption is that, as a general matter, a judgment of conviction entered on a defendant's plea of guilty or nolo contendere does not present any issue warranting relief on appeal, and hence should not be reviewed thereon."  (*Id.* at p. 1097.)  A certificate of probable cause is not required when the defendant's appeal is based on search and seizure issues or grounds that arose after his plea was entered and do not affect the plea's validity.  (*People v. Panizzon* (1996) 13 Cal.4th 68, 74; Cal. Rules of Court, rule 8.304(b).)

Here, there is no dispute that defendant's claims challenge the validity of his pleas and admissions.  (See, e.g., *People v. Thurman* (2007) 157 Cal.App.4th 36, 44, fn. 6 [contention that court failed to make sufficient inquiry into basis for guilty plea challenges legality of plea]; *People v. Castelan* (1995) 32 Cal.App.4th 1185, 1187 [claim on appeal that trial court should have granted motion to withdraw plea, which was made on basis that he did not make plea voluntarily, required certificate of probable cause].)

However, under the unique circumstances of this case, we decline to dismiss the appeal and proceed to the merits of the appeal.

B.      *Advisement and Waiver of Constitutional Rights*

Before a trial court may accept a defendant's guilty plea, the defendant must be informed of several rights, including the right to a jury trial, the right to confront the defendant's accusers, and the defendant's privilege against compulsory self-incrimination.  (*Boykin v. Alabama* (1969) 395 U.S. 238, 242-243 (*Boykin*); *In re Tahl* (1969) 1 Cal.3d 122, 132-133 (*Tahl*), disapproved on another point in *Mills v. Municipal*

*Court* (1973) 10 Cal.3d 288, 307.) After being so advised, if the defendant decides to waive those rights, the defendant must, as a matter of state law, waive them expressly and specifically on the record. (*People v. Howard* (1992) 1 Cal.4th 1132, 1175, 1179 (*Howard*) [so requiring under the court's supervisory powers].) It is thus error (*id*. at p. 1175) under state decisional law when a trial court fails to have the record reflect the defendant's express waiver of each specific constitutional right. Based on these principles, defendant challenges the constitutional validity of his pleas and admissions, contending that the trial court failed to advise him and confirm his waiver of these rights when he pleaded guilty and admitted the prior convictions.

*Howard* followed then-recent federal decisions and held that such error is subject to prejudice analysis. "[E]rrors in the articulation and waiver of those rights . . . require the plea to be set aside only if the plea fails the federal test." (*Howard*, *supra*, 1 Cal.4th at p. 1175.) Under that test as described in *Howard*, such error does not require reversal despite a court's failure to describe the important constitutional rights the defendant will be waiving and obtain the defendant's waiver of them "if the record affirmatively shows that [a defendant's guilty plea] is voluntary and intelligent under the totality of the circumstances." (*Ibid*.) To evaluate a claim of such error, "the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of [guilt] was intelligent and voluntary . . . ." (*People v. Mosby* (2004) 33 Cal.4th 353, 361 (*Mosby*).)

*Howard* and *Mosby* both addressed *Boykin-Tahl* considerations in the context of a defendant's admission of a prior conviction. But the Supreme Court has strongly implied

9

that the same analysis applies "on direct appeal from a guilty plea to a substantive offense." (*People v. Allen* (1999) 21 Cal.4th 424, 439, fn. 4; see *People v. Collins* (2001) 26 Cal.4th 297, 310-311.) In *People v. Christian* (2005) 125 Cal.App.4th 688, the court applied *Howard* and *Mosby* to a claim similar to defendant's claim: that a plea of guilty to a substantive offense should be set aside because of invalid advisements. We undertake the same analysis here.

Thus, we review the "totality of the relevant circumstances" to determine whether the defendant made a constitutionally adequate and valid plea and admission. (*Howard*, *supra*, 1 Cal.4th at p. 1180; see *People v. Allen*, *supra*, 21 Cal.4th at p. 439, fn. 4.) We consider the defendant's in court statements as well as any plea agreement he or she may have signed. (*In re Moss* (1985) 175 Cal.App.3d 913, 925, fn. 7 (*Moss*) ["the desire to plead guilty along with all the other statements contained on the plea form unmistakably indicate an intent to plead guilty"].)

"In most cases, a defendant may enter a plea of guilty without any particular incantation." (*Moss*, *supra*, 175 Cal.App.3d at p. 925; see *People v. Reeves* (1966) 64 Cal.2d 766, 772.) " 'The form of the plea is not of vital importance, provided the admission of guilt is clear, definite, and unconditional.' " (*People v. Gibbs* (1961) 188 Cal.App.2d 596, 600-601.)

*Moss*, *supra*, 175 Cal.App.3d 913 is instructive. In that case, the self-represented defendant signed a " 'Waiver of Constitutional Rights' " form and pled guilty to driving under the influence and driving with a suspended license. (*Id.* at pp. 918, 920.) There was a gap in the transcript recording, so in the discussion with the court, the recording

10

reflected no advisements or inquiries relating to the defendant's constitutional rights. Nor was there any mention or discussion of the "Waiver of Constitutional Rights" form signed by the defendant. The trial court judge, however, testified that it was his practice to ask a defendant who signed the waiver form whether he read and understood the form. In holding that the defendant had properly waived his constitutional rights and pled guilty, the appellate court stated: "The court may rely upon such a validly executed waiver form in assessing whether a plea is voluntary and in assessing whether [the] defendant has waived his constitutional rights. . . . [¶] Even when a defendant is not represented by counsel, a waiver form, such as the one here, is sufficient, *provided the court is assured that a defendant has signed and understands the form*." (*Id*. at pp. 925-926, italics added.) The appellate court found the waiver valid based on the form and because the trial court also signed a portion of the plea form entitled " 'Findings and Orders' " which stated the defendant had knowingly, intelligently and understandingly waived his rights and that the waivers were given freely and voluntarily. (*Id*. at p. 927.)

Examining the record in this case, we find that under the totality of the circumstances, defendant's pleas and admissions were knowing and intelligent. Defendant initialed and signed a plea form that stated he had a right to a jury trial, right to cross-examine witnesses, right to compel and present evidence in his defense, right to an attorney, right against self-incrimination, and right to remain silent. While defendant also initialed some sections in the consequences of the plea that did not apply to him, at the hearing the trial court asked defendant whether he read and understood the plea form and whether he chose to give up those rights. As to each inquiry, defendant responded in the

11

affirmative. The court also asked defendant whether he had any questions and defendant replied, "No." After inquiring of defendant, the trial court expressly found that the pleas and admissions were entered freely and voluntarily. In addition, the court's minute order indicates the plea and admissions were knowingly, understandingly, voluntarily, and intelligently made. (See *Moss*, *supra*, 175 Cal.App.3d at pp. 925-926 [minute order entry waivers voluntary and intelligent]; *Nelson v. Justice Court* (1978) 86 Cal.App.3d 64, 67 [same]; *Zimmerman v. Municipal Court* (1980) 111 Cal.App.3d 174, 179 [docket entry indicating defendant specifically advised of dangers and disadvantages of self-representation]; *Ganyo v. Municipal Court* (1978) 80 Cal.App.3d 522, 529-530 [docket entry waiver voluntary and intelligent].)

Citing *In re Birch* (1973) 10 Cal.3d 314, defendant contends that the recitals in the clerk's minute order regarding the trial court's advisements and findings and defendant's purported waivers must be disregarded because they are directly contradicted by the reporter's transcript. *In re Birch* is distinguishable. There, the Supreme Court was confronted with a reporter's transcript of proceedings at the arraignment in which important particulars contradicted the recitals in the clerk's docket entry. The reporter's transcript revealed only that the court had informed the defendant of the charge and asked him how he pled, to which the defendant replied, " 'Guilty.' " (*In re Birch*, *supra*, 10 Cal.3d at pp. 316-317.) The Supreme Court noted, "The transcript contains nothing which demonstrates that petitioner was advised of his right to counsel or any other constitutional right, nor does it reveal that petitioner ever waived any of such rights. The clerk's docket entry, by contrast, contains hand-checked, rubber-stamped entries which

12

purport to indicate that petitioner 'expressly waived' his right to counsel and various other constitutional rights, and that 'after inquiry by court, the court found such waivers were knowingly, intelligently and understandingly made . . . ." (*Id*. at p. 317, fn. omitted.) In a declaration filed with the court, a deputy city attorney declared that "it was the regular practice in department 105 for him, the deputy city attorney, to read to all unrepresented defendants a complete statement of their constitutional rights at the commencement of court proceedings each day." (*Id*. at p. 320, fn. 6.) The deputy city attorney also declared that "the deputy city attorney would thereafter ask the collected group of defendants if they had any questions about their rights, and if there were no questions, he would distribute written waiver forms which defendants could sign to indicate their awareness of their constitutional rights and their desire to waive such rights through a plea of guilty." (*Ibid*.) The declaration also stated, "however, that after a thorough search of the court files, the deputy city attorney was unable to find any such written waiver form signed by the present petitioner." (*Ibid*.)

The Supreme Court found that because "absolutely nothing" in the reporter's transcript indicated that the defendant had properly been informed of his constitutional right to counsel, the clerk's docket entry "directly contradicted" the reporter's transcript. (*In re Birch*, *supra*, 10 Cal.3d at p. 320.) The court also noted that "when confronted by a defendant who wishes to plead guilty without counsel, the trial judge, before accepting the waiver and plea, should first determine that the defendant ' "understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, [and] the punishments which may be exacted." ' [Citations.]" (*Id*. at p. 319.) The court

13

further asserted, "In view of the absence of any evidence demonstrating that the present petitioner was afforded the 'benefit' of the described normal procedure, we have no occasion to pass directly on the adequacy of the procedure utilized in department 105. We do note, however . . . that the 'better practice' would be for the trial judge himself to inform defendants of their constitutional rights. [Citation.]" (*Id*. at p. 320, fn. 6., citation omitted.)

Here, the trial court gave defendant written advisements and expressly asked defendant if he understood and waived those rights. The clerk's minute order listed the written constitutional rights the trial court referred to when it asked defendant if he was giving up "these rights." Unlike in *Birch*, when viewed in conjuction with the constitutional advisements contained in defendant's plea form, the clerk's minute order does not contradict the reporter's transcript and it correctly reflected the trial court's inquiry. The record also indicates that before accepting the waiver and pleas and admissions, the trial court first determined whether defendant understood the charges and defenses and the maximum penalty if he proceeded to trial, as cautioned by our Supreme Court in *In re Birch*, *supra*, 10 Cal.3d at page 320. Prior to admitting his guilt, defendant had admitted to having the gun. He also stated that he had previously tried to negotiate a plea agreement with the prosecutor where he would serve 10 years. Defendant was informed at a hearing by the trial court that he was facing a potential term of either 29 or 54 years to life in prison depending on whether counts 1 and 2 are run concurrent. The trial court also had explained to defendant the nature of his charges and consequences at the time of the hearing on his motion to dismiss the prior strike convictions.

14

While we agree that the better practice would be for a trial court to "err on the side of caution and employ the time necessary to explain adequately and to obtain express waivers of the rights involved" (*Howard*, *supra*, 1 Cal.4th at p. 1179), the record here demonstrates that defendant was advised of his constitutional rights before he pled guilty and admitted his priors. Defendant was given a written plea form that contained advisements of his constitutional rights and was given an opportunity to review them. Defendant initialed and signed the plea form. At the plea hearing, the trial court asked defendant whether he read and understood the plea form and whether he chose to give up his constitutional rights. At each inquiry, defendant responded, "Yes." Moreover, defendant had heard a recitation of his constitutional rights at his arraignment.

The record of the entire proceedings also demonstrates that defendant understood and properly waived his constitutional rights when he pled guilty and admitted his priors. Defendant had been representing himself for several months prior to the plea hearing and was preparing for trial on the charges. He had requested discovery and had discussed the witnesses he had intended to call with the prosecutor and the trial court. He also had an investigator appointed to assist him. Based on the circumstances, it was clear that defendant knew and understood his constitutional rights to a jury trial and to confront witnesses. Defendant was also aware that he had the right to remain silent and not to incriminate himself. He had not only initialed and signed the plea form advising him of this right, but had experience with the criminal justice system. Defendant had four prior convictions and had stated he had previously represented himself twice. While the probation report did not specify whether the convictions were as a result of a trial or plea,

in either circumstances, defendant would have been advised of his constitutional rights or been made aware of such rights while undergoing trial. Given defendant's prior experience with criminal proceedings, his history of representing himself, and his statements to the trial court that he understood his constitutional rights, his waivers and his subsequent pleas and admissions were knowingly and intelligently made.

Given the totality of the circumstances of this case, we conclude the record demonstrates defendant was aware of his *Boykin-Tahl* rights before he pled guilty to the substantive charges and admitted the prior conviction allegations.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

KING
J.

16