Filed 4/13/22  P. v. Bennett CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B314522 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA090952) |
| v. | |
| MARIE BENNETT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Walgren, Judge.  Reversed and remanded with directions.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In June 2019, the trial court imposed a six-year sentence, suspended execution of the sentence, and ordered defendant Marie Bennett to serve three years of probation. In April 2021, the trial court summarily revoked defendant's probation and, after a contested hearing, the court sentenced defendant to state prison.

Defendant mounts two challenges to the revocation of her probation and her resulting prison sentence. First, she contends the trial court did not have jurisdiction to revoke probation because of recent legislation[1] that reduced her probation period to two years, which two-year period expired before the trial court revoked her probation. She arrives at this conclusion by applying her presentence incarceration, which the trial court later included as a condition of her probation, to reduce the new two-year probationary period. Second, defendant argues the trial court violated her right to due process when it revoked her probation based on grounds for which she did not receive prior written notice.

We disagree with defendant's first contention because even assuming Assembly Bill No. 1950's two-year period applies retroactively to her, the trial court revoked her probation within the two-year period. Defendant's incarceration, served as a condition of probation, does not reduce the two-year probationary period.

---

[1] Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill No. 1950) (Stats. 2020, ch. 328, § 2), effective on January 1, 2021, reduced felony probation terms to two years (with certain exceptions not relevant here), by modifying Penal Code section 1203.1. Undesignated subsequent statutory citations are to the Penal Code.

We, however, agree with her second contention. It is undisputed that defendant never received prior written notice of all but one of the bases the trial court cited to formally revoke her probation. That failure violated her right to due process, requiring us to reverse the judgment. Upon remand, we agree with the parties that irrespective of whether there is a new probation violation hearing, the trial court must resentence defendant.

## BACKGROUND

### 1. *Conviction and sentence*

On December 26, 2018, the People charged defendant with five counts of perjury. In an amended information, the People alleged that in 2003, defendant requested an identification card using an alias. The remaining counts allege the same conduct occurring in 2007 and three times in 2016. The People further alleged defendant suffered six prior convictions for possession of a controlled substance (Health & Saf. Code, § 11350), dating back to 1999. According to defendant, the perjury charges stemmed from her use of an alias to hide from an abuser. Defendant pleaded no contest to the charges. On her plea form, she indicated it was an open plea.

On June 3, 2019, the trial court sentenced defendant to an aggregate term of six years. The court suspended execution of its sentence and placed defendant on three years' formal probation. As a condition of probation, the court ordered her to serve 180 days in county jail. The court credited defendant for 180 days, consisting of 90 days actual presentence custody and 90 days good time credit. Among other conditions of probation, the court ordered defendant to complete a 120-day drug

3

treatment program, obey all laws, and report to probation. The court ordered defendant to pay a restitution fine, criminal conviction fee, and security fee. The court also ordered and stayed a probation revocation fine pending successful completion of probation.

## 2.    *Probation reports*

In a report filed with the superior court on October 17, 2019, the probation officer stated that defendant was in compliance with the terms of her probation. The report indicated defendant had completed a three-month residential drug program and tested negative for controlled substances in 16 random drug tests. This report indicated the probation period would expire on June 2, 2022 (three years after the June 3, 2019 sentencing date).

In a report filed January 31, 2020, the probation officer represented that defendant had not reported to probation, and had told the probation officer that "she was going through some health issues." Following that report, the trial court revoked and reinstated defendant's probation.

In an April 1, 2021 report, the probation officer indicated that on March 23, 2021, defendant was stopped at a traffic stop and did not have a valid driver's license. Officers searched defendant's vehicle and recovered three "EBT cards", (a card used to redeem public assistance benefits), two credit cards, and three pieces of "EDD mail . . . and an unemployment insurance application" belonging to other people. Officers arrested defendant for possession of access cards. The probation report indicated that defendant had failed to complete 26 days of community labor and was delinquent in paying her fines and fees. (The initial sentencing court did not order defendant to complete community service.) The report further indicated that

4

"prior to the recent arrest the defendant had stated she is unable to pay on her financial obligation as she is not receiving an income. She has been waiting on unemployment."

The probation officer recommended that the trial court (1) find defendant in violation of her probation; (2) order defendant to attend an anti-theft program; and (3) order defendant to pay her financial obligation. The probation officer recommended "[a]ll other terms and conditions to remain the same." The probation officer attached an arrest report indicating that defendant was arrested for identity theft based on the items found in her vehicle following the March 23rd traffic stop.

In a supplemental report, the probation officer stated that defendant explained she was not charged with identity theft and that she had been helping the persons whose papers officers found in defendant's vehicle. The probation officer stated, "[T]he defendant has sustained an arrest for grand theft of access cards. In addition she is in financial delinquency." Based on the foregoing, the probation officer "recommended that the defendant be found in violation of her probation and that she be ordered to attend an anti-theft program and to submit proof of enrollment to the probation officer. It is also recommended that the defendant be admonished to pay on her financial obligation."

3.    *Summary revocation of probation*

On April 16, 2021, the trial court summarily revoked defendant's probation. The trial court relied on the April 1, 2021 probation report. At the outset, the court stated, "[T]he court has been notified that she was arrested with essentially about ten or so ID's in the name of other individuals." The court stated: "[T]o be on probation for perjury and then to be arrested for essentially

5

the same type of behavior, identity theft.  She is going to be remanded forthwith."

### 4.  *Formal probation hearing*

The trial court held a contested probation revocation hearing on May 19, 2021.  Officer Jake Johnson testified that on July 26, 2020, he observed defendant driving 35 miles per hour in a 65-mile-per-hour zone.  According to Officer Johnson, defendant "drift[ed]" out of her lane.  Officer Johnson stopped defendant and asked defendant if she had a driver's license, and she said she had only an identification card.  Officer Johnson searched her vehicle where he found a crack pipe, a small rock, and a can of pepper spray.  A later analysis showed the rock consisted of .1166 net grams of cocaine in the base form.  Defendant told Officer Johnson she was a long-time crack cocaine user.

Deputy Sheriff Kevin Pacheco testified that on August 19, 2020, he answered a dispatch call to respond to an unconscious woman in a locked vehicle.  He observed defendant slumped over the steering wheel of her vehicle.  Deputy Sheriff Pacheco searched her vehicle and found a plastic bindle containing two white rock substances resembling cocaine base.  Later tests revealed 1.3464 grams of rock cocaine.

Officer Mitchell Tosti testified that on March 23, 2021, he stopped defendant because her rear license plate light was not working.  Officer Mitchell asked defendant if she had a driver's license and defendant responded that she did not.  Officer Mitchell found EBT cards and debit cards in other persons' names.  Officer Mitchell also found mail that did not belong to defendant.  Officer Mitchell made no attempt to contact the named individuals to find out if they had consented to defendant's possession of those documents.

6

Boris Curtis, defendant's boyfriend, testified for defendant. He stated that he had given defendant permission to have his EBT card because she shops for their household groceries. Donald Cummings, a friend gave defendant his EBT card as payment for defendant's assistance. Defendant accepted payment in the form of EBT cards because the individuals she helped had no money. The prosecutor cross-examined Curtis, impeaching him with numerous convictions, most of which Curtis did not recall. Curtis believed defendant was addicted to rock cocaine.

The prosecutor argued that the trial court should revoke defendant's probation because defendant drove without a valid driver's license, possessed rock cocaine, and possessed pepper spray. With respect to the March 23, 2021 incident, the prosecutor argued: "[S]he's in violation of probation for violating the law with the traffic violations as well as not having a driver's license on her because it is suspended or revoked." The prosecutor further argued that Curtis's testimony was not credible.

Defense counsel acknowledged that defendant violated probation by possessing crack cocaine, a crack pipe, and having a suspended driver's license. Counsel acknowledged that defendant "has a very, very heavy crack problem. And she can't even leave home without having a crack pipe on her because she can't go 15 minutes without smoking crack, and she desperately needs help." Counsel, however, argued that with respect to the "current case," the People did not prove that defendant had used other individuals' identities without their consent.

The trial court found defendant violated the terms of her probation by: (1) driving while unlicensed; (2) possessing cocaine;

7

and (3) being in the possession of pepper spray, all in violation of the probation requirement that she obey all laws.  The court indicated it was not using identify theft as a basis for the probation violation.

After noting defendant's lengthy criminal history, the court indicated it would sentence her to state prison and did so on July 15, 2021 when it sentenced defendant to an aggregate six-year term consisting of the high term of four years on count 1 (perjury), one-third the midterm on count 2 (perjury) one-third the midterm on count three (perjury), and a concurrent four-year sentence on count 4 (perjury).  The court awarded defendant 450 days presentence conduct credit.

## DISCUSSION

### A.  The Trial Court Had Jurisdiction Over Defendant When It Revoked Her Probation

"During the probationary period, the court retains jurisdiction over the defendant [citation] . . . ."  (*People v. Howard* (1997) 16 Cal.4th 1081, 1092.)  Assembly Bill No. 1950 generally limits felony probation terms to two years.  As we explain below, the trial court revoked defendant's probation within that two-year period.

Defendant attempts to avoid this conclusion by applying the time she served in custody as a condition of her probation to reduce the new two-year probation term provided in Assembly Bill No. 1950.  According to defendant, defendant has 90 days actual and 90 days good conduct custody credit resulting from serving the jail term that was a condition of her probation.  According to defendant, whether one subtracts the full 180 custody credits, or just the 90 actual days spent in custody,

8

from the two-year probationary period under Assembly Bill
No. 1950, her probationary period expired either on December 4,
2020, or March 4, 2021, respectively.  Defendant argues that any
contrary interpretation would "penalize indigent defendants"
because it "would essentially eliminate pre-sentence custody
credits for time spent in detention against a term of probation for
individuals who could not afford to post bail . . . ."

### 1.    Assembly Bill No. 1950

"Assembly Bill No. 1950 amended section 1203.1 to limit
the maximum probation term a trial court is authorized to
impose for most felony offenses to two years." (*People v. Sims*
(2021) 59 Cal.App.5th 943, 947.)  Previously, section 1203.1,
subdivision (a) allowed courts to impose a term not exceeding the
maximum possible term of the sentence or five years, whichever
was less.  (Former § 1203.1, subd. (a), eff. Jan. 1, 2012 to Dec. 31,
2020.)

Section 1203.1 now provides in pertinent part:  "(a) The
court, or judge thereof, in the order granting probation, may
suspend the imposing or the execution of the sentence and may
direct that the suspension may continue for a period of time *not
exceeding two years*, and upon those terms and conditions as it
shall determine.  The court, or judge thereof, in the order
granting probation and as a condition thereof, may imprison the
defendant in a county jail for a period not exceeding the
maximum time fixed by law in the case." (§ 1203.1, subd. (a),
italics added.)  Section 1203.1, subdivision (a)(2) provides:  "The
court may, in connection with granting probation, impose either
imprisonment in a county jail or a fine, both, or neither."

For purposes of this appeal, we assume without deciding,
that Assembly Bill No. 1950, modifying section 1203.1, would

apply retroactively to defendant.  (See *People v. Quinn* (2021) 59 Cal.App.5th 874, 883–884 [Assembly Bill No. 1950 applies retroactively]; *People v. Sims*, *supra*, 59 Cal.App.5th at pp. 955–964 [same]; *People v. Lord* (2021) 64 Cal.App.5th 241, 244–246 [same]; cf. *Kuhnel v. Appellate Division of Superior Court* (2022) 75 Cal.App.5th 726, 736–737 [Assembly Bill No. 1950 did not deprive the trial court of jurisdiction summarily to revoke misdemeanor probation when defendant violated probation during the first year of her probationary term].)

**2.**   **The trial court revoked defendant's probation within the two-year probationary period set by Assembly Bill No. 1950**

Assuming the two-year probation period applies to defendant, her probation would have expired on June 2, 2021 (two years after her June 3, 2019 sentencing).  The trial court summarily revoked her probation on April 16, 2021, prior to the expiration of her probation period.  Therefore, the trial court had jurisdiction over defendant when it revoked her probation. (*People v. Howard*, *supra*, 16 Cal.4th 1081 at p. 1092.)[2]

Defendant's argument that her 180-day incarceration reduced the two-year probation period suffers from several

---

[2] "[S]ummary revocation of probation preserves the trial court's authority to adjudicate a claim that the defendant violated a condition of probation during the probationary period . . . [T]he purpose of the formal proceedings 'is not to revoke probation, as the revocation has occurred as a matter of law; rather, the purpose is to give the defendant an opportunity to require the prosecution *to prove the alleged violation occurred and justifies revocation.*'  [Citation.]"  (*People v. Leiva* (2013) 56 Cal.4th 498, 515.)

fallacies. First, defendant applies her presentence incarceration to reduce her probation term when the applicable statute permits the presentence incarceration to apply only to a term of imprisonment or fine. Section 2900.5, subdivision (a) provides in pertinent part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody . . . all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019, . . . shall be *credited upon his or her term of imprisonment, or credited to any base fine that may be imposed*, at the rate of not less than one hundred twenty-five dollars ($125) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served."[3] The statute does not permit crediting defendant's presentence custody toward the (now) maximum two-year probation period.

Second, defendant's reliance on section 4019 is misplaced because that statute governs the calculation of a defendant's good time/work credits. Section 4019 does not authorize those credits

---

[3] A term of imprisonment includes "any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any sentence, and also includes any term of imprisonment, including any period of imprisonment prior to release on parole and any period of imprisonment and parole, prior to discharged, whether established or fixed by statute, by any court, or by any duly authorized administrative agency." (§ 2900.5, subd. (c).)

11

to reduce a term of probation.[4]  Consistent with sections 2900.5 and 4019, the original sentencing court credited defendant's presentence incarceration (90 days plus 90 days goodtime/work time credits) to defendant's term of imprisonment, imposed as a condition of probation.

The original sentencing court ordered defendant to serve 180 days as a condition of probation and *additionally* ordered her to serve a three-year probation term.  Assuming Assembly Bill No. 1950 applies to defendant, it serves to reduce the three-year probation term to two years.  It does not affect the additional condition of probation requiring defendant serve 180 days.

Finally, in her reply brief, defendant fleetingly refers to equal protection stating that her "interpretation better advances the goal of equal protection and better respects the Legislature's intent . . . ."  As just noted, defendant's interpretation is not even consistent with the language of the applicable statute, section 2900.5.  Defendant's unadorned reference to equal protection also does not undertake the analysis required to demonstrate constitutional error.  Defendant does not argue she is a member of a suspect class or that a fundamental right is at issue.  Thus, the rational basis test applies, but appellant fails to analyze the following elements of that test:  The legislation treats persons

---

[4] Defendant cites section 4019, subdivision (a)(2) which provides that its provisions apply to a defendant confined in county jail as a condition of probation.  Defendant also cites to subdivision (f) which provides:  "It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody."  Neither subdivision supports defendant's argument that her presentence incarceration shortens the maximum two-year probation period.

12

similarly situated differently and there is no rational basis for that disparate treatment. (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.) Under the rational basis test, the fact that legislation may be underinclusive as to some persons similarly situated does not violate the equal protection of the law. As our Supreme Court has stated, " '[w]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.' [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citation], or 'because it may be "to some extent both underinclusive and overinclusive" ' [citation]." (*Id.* at p. 887.)

In sum, even if Assembly Bill No. 1950's ameliorative change in section 1203.1 applies to defendant, her probation term would have expired on June 2, 2021 (two years from the date of her sentence). The trial court revoked her probation April 16, 2021, within the two-year period for felony probation set forth in Assembly Bill No. 1950.

**B.**    **Defendant's Right to Due Process Was Violated Because She Did Not Have Prior Notice of All But One of the Grounds for Formally Revoking Probation**

Defendant argues the trial court erred in revoking her probation based on theories for which she had no prior notice and that this error violated her right to due process.

The Attorney General does not appear to contest that (1) the prosecutor and trial court relied on new grounds at the formal revocation hearing; and (2) defendant had no prior notice of those grounds. The Attorney General counters that defendant waived her due process objection to this lack of notice by not

13

raising it below.  The Attorney General never addresses the merits of defendant's actual due process claim because the Attorney General misconstrues that claim.  Specifically, the Attorney General asserts, "[a]ppellant contends her right to due process was violated because the trial court revoked her probation based on a theory that was not argued by the prosecution."  The Attorney General then asserts the prosecutor discussed the theories during the contested hearing.  The basis for defendant's due process claim, however, was the absence of notice *before* the contested hearing of the grounds on which the trial court relied to formally revoke her probation.

## 1.    The Attorney General has not demonstrated forfeiture

The Attorney General contends defendant cannot raise "a notice issue for the first time on appeal citing *People v. Goolsby* (2015) 62 Cal.4th 360, 367 and *People v. Toro* (1989) 47 Cal.3d 966, 976, disapproved on another ground in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, footnote 3.  These authorities are not apt; they concern a defendant's failure to object to instructions on lesser-related offenses at trial.  Our high court has counseled that a defendant cannot adopt a strategy of silence in the trial court when the trial court instructs on a lesser-related offense and then challenge the conviction on the related offense for the first time on appeal, especially when an information can be amended at trial as long as the evidence supporting the amendment was considered at the preliminary hearing.  (*Goolsby*, at p. 367; *Toro*, at p. 976.)

In contrast to cases involving instructions on a lesser related offense, the probation revocation hearing at issue here was not preceded by an evidentiary preliminary hearing.  Indeed,

14

when the trial court summarily revoked defendant's probation, it relied only on the allegations of identity theft, which the trial court ultimately rejected.  Thus, the preliminary proceeding in this case afforded defendant no notice of the grounds for formally revoking her probation.  Finally, even if arguendo defendant forfeited her due process argument, we would exercise our discretion to address the merits of this constitutional challenge on the merits.  (*People v. Lewis* (1990) 50 Cal.3d 262, 282 [considering issue on merits to forestall ineffective assistance claim]; *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6 [appellate court may consider unpreserved claims].)

## 2. Due process requires reversal of the judgment

After a summary revocation of probation, a defendant is entitled to a formal hearing.  (*People v. Leiva*, *supra*, 56 Cal.4th at pp. 505, 515–516.)  The minimum requirements of due process include written notice of the claimed violation.  (*Morrisey v. Brewer* (1972) 408 U.S. 471, 489, *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 782; *People v. Vickers* (1972) 8 Cal.3d 451, 458.)  The due process rights set forth in *Morrissey*, including notice, apply to formal probation hearings.  (*People v. DeLeon* (2017) 3 Cal.5th 640, 656.)

Consistent with these principles, it is not disputed that due process requires written notice of any claimed violation in probation revocation cases.  (*People v. Self* (1991) 233 Cal.App.3d 414, 419; see also *People v. Rodriguez* (1990) 51 Cal.3d 437, 441 [probation revocation hearing subject to minimum requirements of due process including written notice of claimed violations]; *In re Moss* (1985) 175 Cal.App.3d 913, 929 [probationer entitled to written statement of reasons for revocation of probation].)  In *Self*, the court stated:  "As the People acknowledge, the

15

probationer is entitled to written notice of the alleged violations of probation, disclosure of the evidence against the probationer and an opportunity to respond to the charges. [Citations.] Accordingly, the trial court erred in permitting the amendment [to add additional grounds for probation revocation] without affording defendant the procedural safeguards required . . . ." (*People v. Self*, *supra*, at p. 419.)

In the case before us, the probation officer primarily relied on defendant's arrest for identity theft and defendant's financial delinquency. The probation officer also reported that when defendant was arrested for identity theft on March 23, 2021, she did not have a valid driver's license and (incorrectly) reported that she had not completed 26 days of community service. In summarily revoking defendant's probation, the trial court relied on the alleged identity theft. In formally revoking her probation, the trial court relied on defendant's: (1) driving while unlicensed on multiple occasions; (2) possessing rock cocaine on two occasions; and (3) being in the possession of pepper spray, all in violation of the probation requirement that she obey all laws.

Defendant had prior notice of only one ground on which the trial court relied formally to revoke her probation—that is that on March 23, 2021, defendant was driving without a license. The Attorney General does not argue, and the record does not show, that the trial court would have revoked defendant's probation based solely on defendant's being an unlicensed driver. As defendant contends, she was entitled to notice of the grounds for formally revoking her probation in advance of the contested hearing. (*People v. Self*, *supra*, 233 Cal.App.3d at p. 419.) Upon remand, we do not preclude further probation revocation proceedings so long as those proceedings are consistent with

16

due process requirements. (See *People v. Mosley* (1988) 198 Cal.App.3d 1167, 1175 [failure to follow due process requirements "necessitates a remand for further proceedings in accordance with . . . due process"].)

## C. The Trial Court Must Resentence Defendant In Light of Recent Ameliorative Legislation

The parties agree that the trial court must resentence defendant under section 1170, subdivision (b)(6), as modified effective on January 1, 2022. That statute sets a presumptive low term for victims of trauma or intimate partner violence.[5] We agree that this ameliorative sentencing provision applies retroactively. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307–308 [absent a contrary indication, the Legislature generally intends for ameliorative changes to the criminal law to

---

[5] Section 1170, subdivision (b)(6) provides in pertinent part: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:

"(A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence.

"(B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense.

"(C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking."

17

apply retroactively].)  We agree with defendant that the trial court should appoint counsel for her and should expeditiously assess whether to hold additional probation revocation proceedings and proceed with any such proceedings, or expeditiously resentence defendant.[6]  Nothing in this opinion precludes the parties from raising additional arguments at the resentencing hearing.

---

[6] Defendant's argument that the trial court abused its discretion in revoking her probation is moot given our conclusion that because of a due process violation, we must reverse the judgment.

18

## DISPOSITION

The judgment is reversed. The case is remanded to the trial court. Within 10 days of the issuance of the remittitur, the trial court shall appoint counsel to represent defendant. The trial court shall conduct additional probation proceedings, if any, or resentence defendant forthwith after remittitur.

NOT TO BE PUBLISHED.


BENDIX, Acting P. J.


We concur:



CHANEY, J.



VOGEL, J.*

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.